## S. E. TRACY v. THE STATE.

No. 3147.   Decided December 6, 1905.

**1.—Forgery—Indictment—Variance.**

On a trial for forgery where the indictment alleged in the purporting clause that the forgery was the act of James Charlton as then and there President of the Board of School Trustees, and the instrument is alleged in the tenor clause of the indictment as the act of James Charlton, President of the Board, and S. E. Tracy, Secretary of the Board, the variance is fatal.

**2.—Same—Forgery What Constitutes.**

An instrument which by its tenor is a complete and valid instrument is the subject of forgery, whether the Board of Trustees had ever taken proper action thereon or not, or whether it was actionable in a civil proceeding or not. Henderson, Judge, dissenting.

Appeal from the Criminal District Court of Harris. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Brockman & Kahn,* and *E. T. Branch,* for appellant.—Under the first and thirteenth grounds of the motion to quash the indictment: Huckaby v. State, 78 S. W. Rep., 942; Black v. State, 42 Texas Crim. Rep., 585; Johnson v. State, 40 Texas Crim. Rep., 605; Lynch v. State, 41 Texas Crim. Rep., 209; Crawford v. State, 40 Texas Crim. Rep., 344; Colter v. State, 40 Texas Crim. Rep., 165; Scott v. State, 40 Texas Crim. Rep., 105; Cagle v. State, 39 Texas Crim. Rep., 109; Womble v. State, 39 Texas Crim. Rep., 24; Munoz v. State, 50 S. W. Rep., 949; Beasley v. State, 47 S. W. Rep., 991; King v. State, 27 Texas Crim. App., 567; Wilson v. State, 8 Texas Ct. Rep., 147; Daud v. State, 34 Texas Crim. Rep., 460; Foffville v. State, 17 Texas Crim. App., 368; Rogers v. State, 8 Texas Crim. App., 400; arts. 3, 4 and 554, Penal Code. That warrants are non-negotiable: Stringer v. Morris, 82 Texas, 39; Lane v. Hunt County, 13 Texas Civ. App., 317; Parker County v. Courts, 2 U. C., 398; San Patricio County v. McClane, 44 Texas, 392.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment contains six counts: the first, third and fourth charge forgery, and the second, fifth and sixth passing or uttering a forged instrument. The court submitted only forgery, and therefore the counts with reference to passing forged instruments will not be considered. Motion to quash was overruled. As the court only charged with reference to the counts where the forgery is predicated upon the act of James Charlton, acting as president of the board of school trustees of the independent school district of the city of Houston, the third count will not be considered, because that charged the forgery purported to be the act of the board of school trustees of the independent school district of the city of Houston. Therefore, as the case is presented all the counts in the indictment pass out by reason of the court having elected to submit the case to the jury upon that phase of the indictment which charged the act to be that of Charlton as president of the school trustees of the independent school district of the city of Houston. The court having elected for the State to submit the case upon this issue, or purported act, all of the others pass out of the indictment, and cannot form the basis of further prosecution under this indictment.

The first count charged that the alleged forged instrument in writing purported to be the act of another to wit: the act of James Charlton, as then and there the president of the board of school trustees of the independent school district of the city of Houston, which said false instrument is to the tenor following:

"No. 680.          PUBLIC SCHOOL WARRANT.
                   On what account issues—Repairs.
"122.65.                              HOUSTON, TEXAS, Mar. 4, 1902.
To J. J. Settegast, Treasurer of the Board of Trustees of the Independent School District of the City of Houston.
Pay to the order of George Gaertner, the sum of One Hundred and

Twenty-two 65–100 Dollars, out of the local public school funds of the Independent School District of the city of Houston.

By order of the Board of Public School Trustees.

Attest: JAMES CHARLTON,

S. E. TRACY, President of the Board.

Secretary of the Board."

The fourth count in the purport clause is the same and the tenor clause is the same.

The claim that there is a variance between the purport and tenor clauses is well taken. By the purport clause it is shown to be the act of James Charlton, president, etc. The instrument itself shows it to be the acts of James Charlton, president of the board of school trustees, and S. E. Tracy, secretary of the board. We deem it unnecessary to review the authorities or go into any lengthy discussion of the matter. The cases are numerous, and in point to the effect that this motion to quash is well taken. Millsaps v. State, 38 Texas Crim. Rep., 570, 43 S. W. Rep., 1015; Stephens v. State, 36 Texas Crim. Rep., 386; Campbell v. State, 35 Texas Crim. Rep., 182; Gibbons v. State, 36 Texas Crim. Rep., 469; Stephens v. State, 38 S. W. Rep., 997; Booth v. State, 36 Texas Crim. Rep., 600, 38 S. W. Rep., 196; Crayton v. State, 7 Texas Ct. Rep., 973; Thulemeyer v. State, 38 Texas Crim. Rep., 349, 43 S. W. Rep., 83.

In Millsaps case, supra, it is said, that the tenor clause sets out an instrument signed, C. H. Storey, secretary, and Ed. Strauss, president. The indictment alleged that the forged instrument purported to be the act of the Waco Hardware Company, Waco, Texas. In the Stephens case, 36 Texas Crim. Rep., the purport clause alleged the instrument to be the act of Green. The tenor showed it to be signed by Green and Stephens. Crayton's case, supra, holds that where the purport clause alleged the instrument as the act of Brack Hall, and the instrument was signed by Brack Hall and three other parties, the variance was fatal. Because of the variance between the purport and tenor clause, the indictment is held to be vicious.

The further objection is made that the act or the alleged forgery would constitute no offense against the laws of the State. We do not agree with this contention. The main proposition upon which appellant seems to base this contention is that as presented it could not form the basis of a civil proceeding, or the predicate of a judgment for recovery, because it was not shown or alleged that the proper action had been taken by the board of school trustees authorizing the issuance of the order; and that, in order to constitute a genuine instrument or one that would form the basis of a civil proceeding, it would have been necessary for such action on the part of the Board. This may or may not be true. Under the authority of McDonald v. School Trustees, 53 S. W. Rep., 555, this position would not be well taken, if the instrument bears prima facie evidence of correctness. But it does not follow

in any event that because an instrument will not form the basis of a civil proceeding, or the predicate for a judgment in a civil action, that therefore the instrument would not be the subject of forgery. It is too well settled for discussion that the forgery of a fictitious name will form the basis of a conviction for forgery; yet it might not form the basis of a civil judgment. If the instrument by its tenor, is as the law books say, "a complete and valid instrument upon its face," then it is the subject of forgery. This was a completed instrument, so far as the president and secretary of the board of school trustees could make it, whether the board of trustees had ever taken proper action, or not. The fact that the board of trustees had not done so, could not affect the face of the instrument. Mr. Bishop says that, "An instrument to be the subject of forgery must on the face of it be good and valid for the purpose for which it was created." 2 Bishop Crim. Law, 506. Such we understand to be the well settled law in Texas, where that question has been the subject of discussion. Hendricks v. State, 26 Texas Crim. App., 176; King v. State, 27 Texas Crim. App., 567. It may be even said that it is not necessary that the check should have a completed legal efficacy. It would be sufficient if its legal efficacy be apparent, though not actual or real. The supreme court of Indiana says, "It is true that the forged instrument on its face must appear to be one of sufficient legal efficacy, but it is sufficient if the legal effect be apparent and not actual. It is only where the instrument appears as a matter of law to be void that the accused can escape." And Mr. Bishop thus states the law: "Since men are not legally presumed to know the facts, the instrument which is good on its face may be legally capable of effecting a fraud, though inquiry into extrinsic facts should show it to be invalid, even if it were genuine." 11 Ind., 595, 13 N. E., 114, and authorities there cited. It is not necessary that the instrument be actionable in order to constitute it the subject of forgery. It is sufficient if the instrument affect property and is one which could be used as evidence, either for or against a person whose act it purports to be, or against any other person. 38 La. Ann., 202; 26 Iowa, 407; 23 Ore., 562; 32 Pac., 621; 100 Cal., 664; 24 Law Rep. Ann., p. 33, et seq., and notes for collated authorities. A contrary doctrine seems to have been held by a majority of the court in Caffey's case, 36 Texas Crim. Rep., 198. That case, however, was overruled in the subsequent case of King v. State, 42 Texas Crim. Rep., 108. In King's case, this very question was gone into at some length, and the authorities collated, and many quotations made: "Mr. Bishop in his work on Criminal Law, sec. 533, thus lays down the rule: 'The false instrument must be such as if true, would be of some real or legal efficacy, since otherwise it has no tendency to defraud. In other words, it must either be in fact or must appear to be of legal efficacy, but it need not have both the appearance and reality.' Many authorities were collated by that author in support of the proposition in note 5 to said section. In section 538, he further says, "A written instrument affirmatively invalid on its face cannot be

the subject of forgery, because it has no legal tendency to effect the fraud. Entering into this question is the distinction many times adverted to in these volumes, that every man is presumed to know the law, yet not to know the facts." So, if the instrument is void on its face it cannot be subject of forgery, but otherwise if valid on its face, though invalid as a matter of fact or under proof. In 17 Wend., 540, 542, this language is found: "There is a distinction between the case of an instrument apparently void, and one where the invalidity is to be made out by the proof of some extrinsic fact. In the former case the party who makes the instrument cannot, in general, be convicted of forgery, but in the latter he may." Such is the rule with reference to fictitious persons, and in regard to the latter class of persons Mr. Bishop, in section 543, lays down the rule, "From this doctrine of a seeming validity sufficing, though it is not real, we have the further result that if the person whose instrument the forgery purports to be is dead, or if he is a mere fictitious person, still, as the question of the existence of such a person is one of fact, not of law, and the instrument appears valid on its face, the offense is complete." In section 544, this language is found: "(1) Restated, the ordinary doctrine is that, for the invalidity of the instrument to be a perfect defense, the defect must appear on its face, or, to exclude this sort of defense, it must appear on its face to be good and valid for the purpose for which it was created. In another aspect: (2) Evidence of fact. The instrument must be such that if it were genuine it would be evidence of the fact it sets out." See also Anderson v. State, 20 Texas Crim. App., 595, which follows the rule laid down by Mr. Bishop. If these authorities are correct, this instrument is the subject of forgery. It purports to be the act of Charlton, president of the board of trustees, attested by S. E. Tracy, secretary of the board, and drawn by order of the board. In order to render it invalid even in a civil proceeding an investigation would have to be made as a matter of fact to ascertain whether the board had passed some previous order authorizing the issuance of the check. On its face it imports an obligation and is sufficient, and while it might or not be actionable in a civil proceeding, still on its face it appears to be a valid instrument or of sufficient validity to form the subject of forgery. We are therefore of the opinion that the instrument is the subject of forgery, but because of the variance between the purport and tenor clauses mentioned, the motion to quash should have been sustained.

There are many question suggested for reversal arising during the trial and preserved by bill of exceptions, but as the indictment is defective and cannot form the basis of this conviction, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

HENDERSON, JUDGE (dissenting).—I agree to the disposition of the case, on the ground that the indictment was defective. But I do not agree to the subsequent proposition announced by the majority of

the court, that the instrument declared on was the subject of forgery. In fact, the indictment being defective, a decision of this last question was not necessary and is dicta. The instrument declared on not being such a common law instrument as a note or bank check, which is the subject of forgery everywhere, but being a creature of statutory law, all of the steps necessary to give it validity must be taken; that is, the forger must forge a completed instrument, which under the law of its creation imports an obligation, before it is the subject of forgery. I do not deem it necessary to discuss this question further; but according to my view, Caffey v. State, 36 Texas Crim. Rep., 198, is in point, and enunciates a correct rule of law.