### D. L. KING v. THE STATE.

#### No. 1932. Decided June 6, 1900.

**1. Irrelevant and Inadmissible Evidence—Harmless Error.**

The admission of irrelevant or inadmissible evidence will not require a reversal of a judgment of conviction unless its effect upon defendant's case was probably injurious, and especially where defendant's guilt is shown beyond question and the minimum punishment for the offense has been assessed against him.

**2. Forgery—Unstamped Instrument.**

It is not necessary in a case of forgery that the forged instrument be stamped with a revenue stamp.

**3. Same—Signature of Married Woman.**

In forgery it is no valid objection that the instrument is not the subject of forgery because signed with the name of a woman who is a married woman, where there is nothing on the face of the instrument to indicate that fact and when in order to show she was a married woman resort to extrinsic facts was necessary. The want of validity must appear on the face of the instrument to render it incapable of being the subject of forgery. Overruling Caffey v. State, 26 Texas Criminal Reports, 198. Henderson, Judge, dissenting.

APPEAL from the District Court of Tarrant. Tried below before Hon. IRBY DUNKLIN.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

No statement required.

*Parker & Maben,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for forgery, and his punishment assessed at confinement in the penitentiary for a term of two years.

The State was permitted to prove by Mrs. Huffmaster that Chestnutt, appellant's principal, made a new contract in regard to the piano sub-

sequent to the alleged forgery, by virtue of which contract Mrs. Huff-
master and her husband executed new notes for the purchase price of
said piano. Defendant was not present when the new contract was
signed. Objections were urged on the ground that he was not present,
and that this settlement was an indirect method of getting before the
jury the opinion of Chestnutt and Mrs. Huffmaster that the note de-
clared upon was a forgery. We believe that this testimony was not
admissible, but further believe that it is not of such prejudicial char-
acter as to require a reversal. It is an undisputed fact, under the tes-
timony, that the note declared upon was a forgery. Mrs. Huffmaster
testified, as did her son, that it was a forged instrument. Defendant
offered no testimony. Before executing the new contract, Chestnutt
and Mrs. Huffmaster visited appellant in jail, taking with them the
forged note. The result of this visit is not stated, but the new con-
tract was then made; Mrs. Huffmaster retaining the piano. The admis-
sion of irrelevant or inadmissible testimony will not require a reversal
unless its effect upon the defendant's case was probably injurious. The
jury gave appellant the minimum punishment, and his guilt is placed
beyond question. If the punishment allotted had been above the mini-
mum, this error would have required a reversal, for in that event its
operation might have been prejudicial.

The court charged the jury as follows: "If you believe from the
evidence, beyond a reasonable doubt, that D. L. King, defendant, in
Tarrant County, Texas, on or about the 6th of January, 1899, without
consent or lawful authority of Mrs. M. I. Huffmaster, and with intent
to injure or defraud, did make and sign the note or instrument in writ-
ing alleged and set out in the indictment read to you in this case, then
notwithstanding the fact that Mrs. M. I. Huffmaster at said time was
a married woman, and notwithstanding the further fact that said in-
strument in writing was not stamped with a United States revenue
stamp, you will find defendant guilty as charged." The objections
urged are (1) that the evidence showed that Mrs. Huffmaster was a
married woman, and on such proof it was the duty of the court to in-
struct an acquittal; and (2) the instrument, not having been properly
stamped, was not the subject of forgery. It is not necessary, in case of
forgery, that the forged instrument be stamped. See Thomas v. State,
40 Texas Crim. Rep., 562. Nor was there error in instructing the jury
that the instrument would be a forgery, notwithstanding Mrs. Huff-
master was a married woman. It is a fact beyond question that Mrs.
Huffmaster was a married woman. This contention of appellant is based
upon the theory that the act of a married woman in signing a note
without the concurring signature of her husband is invalid and non-
enforceable in law. Mr. Bishop, in his work on Criminal Law, says:
"Sec. 533. The false instrument must be such as, if true, would be
of some real or legal efficacy, since otherwise it has no tendency to
defraud. In other words, it must either be in fact, or must appear
to be, of legal validity, but it need not have both the appearance and

the reality." In support of this proposition he cites many authorities collated in note 5 under above section. In section 538 he says: "A writing affirmatively invalid on its face can not be the subject of forgery, because it has no legal tendency to effect the fraud. Entering into this question is the distinction many times adverted to in these volumes, that every man is presumed to know the law, yet not to know the facts." So it will be seen that the distinction is clearly drawn between knowledge of law and knowledge of fact. If the instrument is void on its face, it can not be the subject of forgery, but if valid on its face, though invalid as a matter of fact or under the proof, it would still be the subject of forgery. In section 541 the same author says: "Since men are not legally presumed to know facts' a false instrument good on its face, may work a fraud, though extrinsic facts show it to be invalid even if it were genuine. Therefore there may be forgery of such an invalid 'instrument." In People v. Galloway, 17 Wend., 540, 542, this language is found: "There is a distinction between the case of an instrument apparently void, and one where the invalidity is to be made out by the proof of some extrinsic fact. In the former case the party who makes the instrument can not, in general, be convicted of forgery, but in the latter he may." So with a fictitious person. "From this dictrine of a seeming validity sufficing, though it is not real, we have the further result that if the person whose instrument the forgery purports to be is dead, or if he is a mere fictitious person, still, as the question of the existence of such a person is one of fact, not of law, and the instrument appears valid on its face, the offense is complete." Bish. Crim. Law, sec. 543. In section 544: "(1) Restated, the ordinary doctrine is that, for the invalidity of the instrument to be a perfect defense, the defect must appear on its face, or, to exclude this sort of defense, it must appear on its face to be good and valid for the purpose for which it was created. In another aspect: (2) Evidence of fact. The instrument must be such that if it were genuine it would be evidence of the fact it sets out." We are not undertaking here to discuss instruments or writings uncertain on their face. So it has been held that, if there is a bare possibility that another may be imposed upon, a conviction will be sustained. State v. Dennett, 19 Law. Rep. Ann,, 395; State v. Gryder, 44 Law. Rep. Ann., 962, 11 So. Rep., 573. "It is immaterial whether the counterfeited instrument be such as, if real, would be effectual to the purpose it intends. If there is only a resemblance sufficient to impose upon those to whom it is uttered, or to the public generally, it is sufficient." 3 Chit. Crim. Law., 1035, 1039. "It is not necessary to the offense the instrument should be one which, if genuine, would be a binding obligation. It is sufficient that the instrument purports to be good. The want of validity must appear on the face of the paper, to relieve from the character of forgery." 13 Am. and Eng. Enc. of Law, 2 ed., 1088; United States v. Turner, 7 Pet., 132, 8 L. Ed., 633. In the same volume (13 American and English Encyclopedia of Law) we find this language: "As

a general rule, any writing in such form as to be the means of defrauding another may be the subject of forgery, or alterations in the nature of forgery." Page 1093, note 3, for collation of numerous authorities. "The writing need not be such as, if genuine, would be legally valid. If it is calculated to deceive, and intended to be used for a fraudulent purpose, this is enough." Notes 4 and 5, Id., for authorities. An instrument valid on its face is equally the subject of felonious forgery or felonious uttering, though collateral or extrinsic facts, of whatever character, may exist, that would render it absolutely void if genuine." Same authority, note 6, for authorities; People v. Rathbun, 21 Wend., 509; People v. Galloway, 17 Wend., 540; Russ. Crimes, 317-328; State v. Johnson, 26 Iowa, 407; State v. Hilton, 35 Kan., 338, 11 Pac. Rep., 164; State v. Pierce, 8 Iowa, 231. To the same effect is Anderson v. State, 20 Texas Criminal Appeals, 595; and it follows the rule laid down by Mr. Bishop, supra. In view of these authorities, it will hardly be necessary to discuss the question further. If they are correct, this instrument is clearly the subject of forgery. The note does not show on its face to have been the act of a married woman. There is nothing to indicate that fact, and, in order to show she was a married woman, extrinsic facts were necessary. If the note, on its face, had shown her to be a married woman, we would have a different question, because in that event the instrument itself would have given notice of its invalidity. Caffey v. State, 36 Texas Criminal Reports, 198, is hereby overruled.

There was no error in refusing a continuance. If, in fact, Mrs. Huffmaster told Mrs. Crosby, or John McClain, or Mrs. Payne that she paid more for the piano than was in fact agreed to be paid, it would make no difference. She admitted making statements to the effect that the piano was a $400 piano, or perhaps cost $400, when in fact she only paid $275. But how this could affect the forgery of this note is by no means clear. If she had agreed to pay $400, or so stated, it would have been no excuse for the forgery, and no evidence of the fact, under this case, that the instrument was not forged. There is no contradiction of the forgery. As presented, there is no such error in the record as requires a reversal of the judgment, and it is affirmed.

*Affirmed.*

HENDERSON, Judge (dissenting).—The court instructed the jury, in effect, that if they believed that defendant, without the consent or lawful authority of Mrs. M. I. Huffmaster, and with intent to injure and defraud, made or signed the note or instrument in writing, etc., then, notwithstanding the fact that said M. I. Huffmaster at said time was a married woman, etc., to find him guilty. The note in question, upon which the forgery was predicated, was a promissory note in the ordinary form, for $75, expressing as a consideration therefor that it was in part payment for a piano, and signed, "M. I. Huffmaster." The proof showed, without controversy, that M. I. Huffmaster was at the

time of the execution of said note a married woman, living with her husband. A majority of the court believe that said note is the subject of forgery, and have so announced. Their opinion does not appear to be predicated upon the statute, but upon the definition of forgery at common law, and a number of common law authorities are cited in support of their views. While in the opinion it appears to be conceded that a writing invalid on its face can not be the subject of forgery, because it has no legal efficacy to effect the fraud, yet the distinction seems to be drawn between an instrument valid on its face and one that is invalid; it being held that the invalidity of an instrument can not be shown by extrinsic facts. My brothers appear to quote with approval, as applicable to this case, from the common law authorities, as follows: "It is not necessary to the offense that the instrument should be one which, if genuine, would be a binding obligation. It is sufficient that the instrument purports to be good. The want of validity must appear on the face of the paper, to relieve from the character of forgery." This is all, no doubt, good law, as applicable to forgery at common law, but I do not believe that it has anything to do with our statute; and herein, it occurs to me, lies the difficulty. The definition of forgery at common law is as follows: "Forgery is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 2 Bish. Crim. Law, p. 523; 13 Am. and Eng. Enc. of Law, p. 1088. Our statute (article 530, Penal Code) defines forgery as follows: "He is guilty of forgery who, without lawful authority and with intent to injure or defraud, shall make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." Article 537 provides: "By an instrument which would 'have transferred or in any manner have affected' property, is meant every species of conveyance, or undertaking in writing, which supposes a right in the person purporting to execute it, to dispose of or change the character of property of every kind, and which can have such effect when genuine." Now, it will be observed that there is a radical difference between the two definitions. At common law the instrument, to be the subject of forgery, was required to be of apparent legal efficacy to affect property, while our statute requires that it must be such an instrument as, if genuine, would actually create legal liability. When we have a statute on the subject which is plain and unambiguous, I know of no rule which authorizes or even permits us, in order to make an offense, to appeal to the common law. On the contrary, we are inhibited from going beyond our own Penal Code to determine what are offenses. Arts. 1, 3, 9, Penal Code. Now, measuring this question by the definition given by our penal Code, the question presents

itself, did the instrument, when it was shown by evidence to be the act of a married woman living with her husband, create any pecuniary obligation? That is, would it have bound her, or, as for that matter, any one else, if it had been her genuine act? The question of liability of married women on contracts made by them has been before our Supreme Court in various forms, but we know of no case in which a note such as that involved in this case has been held to be binding on the wife. Certainly, in the absence of extrinsic facts showing that such note was for necessaries, or on account of her separate estate, it would not be held valid, and could neither be enforced at law nor in equity against the wife. Hollis v. Francois, 5 Texas, 195; Harris v. Finburg, 46 Texas, 79. The wife's separate property is liable only for her contracts for necessaries, or for the benefit of her separate estate, and where she is to be charged on account of such contract the pleading must set up the facts. This I understand to be in accord with all the authorities. While the exact question here involved has not been before this court, so far as I am advised, yet all of our decisions on the subject of forgery support the doctrine which is in accord with our statute on the subject, to wit, that the instrument must be such that, if genuine, it will create a valid obligation, and where it is not complete so as to create an obligation, as where something remains to be done to make it a valid legal obligation, such instrument is not the subject of forgery. Caffey v. State, 36 Texas Crim. Rep., 198; Johnson v. State, 40 Texas Crim. Rep., 605. The instrument in question, as shown by the evidence, was the act of a married woman, and did not show on its face that it was for necessaries or for the benefit of her separate property, and was not signed by her husband jointly with her. But it is said that, because this was not shown on the face of the note, extrinsic proof could not be resorted to in order to establish the invalidity of the note. I quote from the opinion as follows: "The note does not show on its face to have been the act of a married woman. There is nothing to indicate that fact, and, in order to show she was a married woman, extrinsic facts were necessary. If the note on its face had shown her to be a married woman, we would have a different question, because in that event the instrument itself would have given notice of its invalidity." That is, as I understand it, it is conceded in the majority opinion that the note of a married woman does not create a pecuniary obligation, but, because the note does not show on its face that she was a married woman, that this can not be shown by extrinsic evidence, in defense of the prosecution. I can not yield my assent to such a doctrine. This would be tantamount to saying to appellant, "The instrument is worthless, and it could be shown in a civil suit, but you will not be permitted to do so against a criminal accusation." While there was nothing on the face of the note to show that Mrs. M. I. Huffmaster was a married woman, still any person receiving said note was bound to take notice of the status of Mrs. Huffmaster, to wit, that

she was a married woman, and the extent to which she could bind herself. In my opinion, the indictment, on its face, set out an instrument which apparently purported to be the obligation of M. I. Huffmaster. It was competent for appellant to show that she was a married woman, and when this was established the instrument created no valid and binding obligation, and, if it had been her genuine act, it was not the subject of legal liability; and the court, instead of giving the charge it did, should have directed an acquittal.