STATE v. R. M. DIXON, Alias ELLIS NASSAR.

(Filed 25 April, 1923.)

1. **Forgery—Criminal Law—Evidence—Constitutional Law—Banks and Banking.**

   Where the defendant is tried for forgery and fraudulently uttering and publishing forged checks, deposited by him with a forwarding bank for collection, the proper officer of the forwarding bank is competent to testify that the checks had accordingly been forwarded to the payer bank, and had been protested for nonpayment and returned, and in corroboration offer the checks in evidence with the notary's certificate of protest; but the proper officer of the payer bank is only competent to testify that the maker of the check had no account there, under the constitutional guarantee that the accused in all criminal actions shall have the right to confront the accuser and witnesses, etc. Const., Art. I, sec. 11.

2. **Same.**

   The right of the accused in a criminal action to confront the accuser and witnesses extends to his having them present before the jury at the trial, and, under oath, have them testify to matters within their own knowledge, subject to the test of a competent cross-examination.

3. **Same—Instructions—Appeal and Error—Prejudicial Error.**

   Where the indictment charges the defendant with the forgery of checks, and with fraudulently altering and publishing them, it is required that

the State show that the checks were falsely made or uttered with a fraudulent intent, and that they were capable of effectuating a fraud; and where the evidence upon the trial permits a finding by the jury that the payee of the check endorsed was a fictitious person, it is necessary for the State to show that the endorser, having the check forwarded for collection, himself signed the name of the fictitious person with the intent to defraud; or, if otherwise, that he was unauthorized to sign the maker's name; and an instruction by the court that it could make no difference whether the maker was a real or fictitious person, if the State had satisfied the jury beyond a reasonable doubt that the defendant was the real maker of the checks, is reversible error.

APPEAL by defendant from *Harding, J.,* at October Term, 1922, of GUILFORD.

Criminal prosecution, tried upon an indictment charging the defendant with forgery and with fraudulently uttering and publishing two forged checks, one drawn on the Merchants Bank and Trust Company of Winston-Salem, N. C., for $210, payable to the order of R. M. Dixon and signed A. C. Corbett, and the other drawn on the same bank for $198, payable to the order of R. M. Dixon, and signed A C. Corbett.

These two checks were presented by the defendant at the Greensboro National Bank for deposit, and were left there by him for collection, he being told at the time by the teller that it was contrary to the rules of the bank to allow strangers to draw money against uncollected funds, and that he would send the checks to Winston-Salem for collection and when collected would place the proceeds to the defendant's credit. The defendant gave his name to the teller as R. M. Dixon, and endorsed that name upon the back of the checks at the time of their delivery to the teller.

The checks were forwarded in due course of mail to the bank at Winston-Salem for collection, and, according to the testimony of the teller of the Greensboro bank, were returned unpaid and protested, with the reason of the protest stated thereon as "No account." Defendant objected to this evidence, and duly noted an exception.

The defendant did not procure from the Greensboro bank any money by reason of his deposit of the checks, but, as testified to by the teller, he simply deposited them for collection with the understanding that they were so deposited, and that he would not be permitted to draw any funds from the Greensboro bank unless and until the said checks had been reported by the bank at Winston-Salem as paid.

His Honor charged the jury that it could make no difference whether A. C. Corbett was a real or fictitious person if the State had satisfied them beyond a reasonable doubt that the defendant was the real maker of the checks, they would convict him if they further found the checks were made and executed with the requisite intent to defraud. Defend-

ant excepted. From an adverse verdict and judgment of two years in the State Prison, the defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Louis W. Gaylord and William P. Bynum for defendant.*

STACY, J.  For the purpose of showing that the checks in question were made out in the name of a fictitious person, or that they were forged by the defendant, the teller of the Greensboro bank, over objection, was allowed to give the reason for their nonpayment by the Winston-Salem bank, as shown by the protest, to be "No account"— meaning that no account was carried at said bank in the name of A. C. Corbett.  It was permissible for the witness to state that the checks had been sent to the Winston-Salem bank for collection, and that they had been protested for nonpayment and returned.  In corroboration of this testimony, we see no reason why the checks themselves, together with the notary's certificate, should not have been offered in evidence.  *S. v. McCormick,* 57 Kan., 440; 3 R. C. L., 1328.  But this was not done, and the objection is based upon other grounds.  The prosecution was seeking to accomplish quite a different end.  In the admission of the evidence, as offered, we think there was error.  The reason for the protest of the present checks, as stated by the notary, considering the purpose for which it was used, if not hearsay on his part, was a mere *ipse dixit* of a third person who was not offered as a witness at the trial so that such memorandum could be considered as supporting, or in corroboration of his evidence.  *Farrington v. State,* 10 Ohio, 354; *S. v. Behrman,* 114 N. C., 797; *S. v. Dowdy,* 145 N. C., 432; 26 C. J., 963.

While doubtless the same conclusion would be reached in the case of a foreign bill of exchange, which is required by our law to be protested for nonacceptance or nonpayment (C. S., 3134 and 3135), yet it may be observed that, in the case at bar, no protest of the instant checks was necessary (C. S., 3134), though it was permissible under C. S., 3100; 3 R. C. L., 1327.  However, as to this last proposition, we make no present decision, because it is not before us, and what we have said must be understood as being confined to the questions raised by the defendant's appeal.  This is a criminal prosecution, not a civil action involving a construction of the law merchant, and the State is seeking to prove by the evidence now in question, more than presentment, demand, and protest of the checks for nonpayment or dishonor.  3 R. C. L., 1328; *S. v. Behrman, supra.*  For these purposes, the evidence may be competent (*Gordon v. Price,* 32 N. C., 385; C. S., 2979); but, in a criminal action, it must be remembered that the defendant is clothed with a

constitutional right of confrontation. 3 R. C. L., 1328. This may not be taken away, even by statute, and assuredly not when the legislative enactment purports to deal only with negotiable instruments and the civil law of evidence. *Dakin v. Graves,* 48 N. H., 45; 96 Am. Dec., 606, note. In this connection it may be well to note that section 10, chapter 13, of the Revised Statutes of North Carolina (1837), making the notary's certificate of protest prima facie evidence against the drawer, of a demand on the drawee and notice to the drawer, apparently has not been brought forward and made a part of our present uniform negotiable-instruments law (adopted in 1899). But back to the subject in hand.

"In all criminal prosecutions every man has the right to be informed of the accusation against him, and to confront the accusers and witnesses with other testimony." Const., Art. I, sec. 11. "We take it that the word *confront* does not simply secure to the accused the privilege of examining witnesses in his behalf, but is an affirmance of the rule of the common law that in trials by jury the witness must be present before the jury and accused, so that he may be confronted; that is, put face to face." *Pearson, C. J.,* in *S. v. Thomas,* 64 N. C., 74. And further, the defendant is entitled to have the testimony offered against him given under the sanction of an oath, and to require the witnesses to speak of their own knowledge and to be subjected to the test of a competent cross-examination.

The defendant also assigns as error the charge of his Honor that it could make no difference whether A. C. Corbett, the purported maker of the checks, was a real or fictitious person, if the defendant actually signed such name to the checks with intent to defraud the officers of the bank or any other person. If the drawer had no existence, of necessity, the name must have been affixed by some one without authority, and if this were done by the defendant with the purpose and intent to defraud— the instruments being sufficient in form to import legal liability—an indictable forgery would have been committed. *Barnes v. Crawford,* 115 N. C., 76; *Williams v. State,* 126 Ala., 50; *Maloney v. State,* 18 Ann. Cas., 480; 2 Words and Phrases, 614. "Forgery may be committed of any writing which, if genuine, would operate as the foundation of another man's liability, or evidence of his right. It is sufficient if the instrument forged, supposing it to be genuine, might have been prejudicial." 19 Cyc., 1380; *S. v. Webster,* 32 L. R. A. (N. S.), 337. Three elements are necessary to constitute the offense: (1) There must be a false making or other alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud. 19 Cyc., 1373. But if A. C. Corbett, the purported maker, were a real person and actually existing, the State would be required to show not only that the signatures in

question were not genuine, but that they were made by the defendant without authority. *People v. Lundin,* 117 Cal., 124; *S. v. Swan,* 60 Kan., 461; 19 Cyc., 1411. To show that the defendant signed the name of some other person to an instrument, and that he passed such instrument as genuine, is not sufficient to establish the commission of a crime. It must still be shown that it was a false instrument, and this is not established until it is shown that the person who signed another's name did so without authority. *People v. Whiteman,* 114 Cal., 338. In this respect, we think his Honor's charge was prejudicial to the defendant.

For the errors, as indicated, there must be a new trial or a *venire de novo;* and it is so ordered.

New trial.