STATE v. HENRY ROBERT LEE GREENLEE, ALIAS JAMES C. SMITH, ALIAS CHARLES T. BROWN.

(Filed 2 February, 1968.)

**1. Criminal Law § 76—**

When the State offers into evidence an alleged confession of the defendant, it is the duty of the trial court, in the absence of the jury, to hear the evidence of the State and of the defendant upon the question of the voluntariness of the confession and to make findings of fact thereon, and such findings are binding on appeal if supported by competent evidence.

**2. Forgery § 2—**

Evidence tending to show that defendant broke into an office of a corporation and took therefrom several blank checks bearing the firm's name and a designated account at a named bank, and that thereafter defendant filled in, endorsed and cashed one of the checks, which was falsely signed with the purported signature of the firm's owner, *held* sufficient to be submitted to the jury on the issue of defendant's guilt of the forgery of the check and of uttering the forged check.

**3. Forgery § 1—**

The false making of checks with fraudulent intent, which checks are capable of effecting a fraud, constitutes forgery. G.S. 14-119.

**4. Same—**

The offense of uttering a forged instrument consists in offering to another the forged instrument with knowledge of the falsity of the writing and with intent to defraud. G.S. 14-120.

**5. Criminal Law § 104—**

Contradictions and discrepancies in the State's evidence are for the jury to resolve and do not warrant nonsuit.

**6. Criminal Law § 140—**

Where the court enters separate judgments imposing sentences of imprisonment and each judgment is complete within itself, the sentences run concurrently as a matter of law.

**7. Indictment and Warrant § 10—**

A difference between the spelling of defendant's alias in the indictment and in a check forged by him in the name of the alias is not fatal, the defendant's correct name appearing also on the indictment and being admitted to by defendant during the trial.

APPEAL by plaintiff from *Armstrong, J.,* 29 May 1967 Criminal Session of GUILFORD—Greensboro Division.

Criminal prosecution upon an indictment containing two counts: The first count in the indictment charges defendant with the forgery of a check, a violation of G.S. 14-119, which check reads as follows:

"CHARLES T. BROWN TRUCK LINES, INC.      No.      66-55
                                                                  531

Tax Account
2203 Asheboro Street      1208 Buff St.
Greensboro, North Carolina                      March 3, 1967

Pay to the Order of      James E. Smith, Jr.      $65.00
Sixty Five.........................................................................DOLLARS
NORTH CAROLINA
NATIONAL BANK                      /s/ Charles T. Brown

For      Labor                      (Stamped NOT PAID
                                             March 6, 1967)

Endorsed on back:  /s/ James E. Smith, Jr.
For Deposit Only to the credit of The Great
Atlantic & Pacific Tea Company, Inc.
Store #303                      (initialed F)
Bank Stamp      March 6, 1967."

The second count in the indictment charges the defendant with uttering and publishing as true a forged check, a violation of G.S. 14-120, which check reads as follows:

"CHARLES T. BROWN TRUCK LINES, INC.        No.        $\frac{66\text{-}55}{531}$

Tax Account
2203 Asheboro Street
Greensboro, North Carolina                    March 3, 1967

Pay to the Order of        James E. Smith, Jr.        $65.00
Sixty Five..................................................................................................DOLLARS

NORTH CAROLINA
NATIONAL BANK                    /s/ Charles T. Brown
For      Labor                  (Stamped NOT PAID
                                 March 6, 1967)

Endorsed on back:   /s/ James E. Smith, Jr.
For Deposit Only to the credit of The Great
Atlantic & Pacific Tea Company, Inc.
Store #303                  (initialed F)
Bank Stamp      March 6, 1967."

Defendant, who was present in court in his own proper person and with his court-appointed counsel, Benjamin S. Marks, Jr., entered a plea of not guilty. Verdict: Guilty on both counts as charged in the bill of indictment.

From a judgment of imprisonment on the verdict of guilty as charged in the first count in the indictment of not less than two years nor more than five years, and from a judgment of imprisonment on the verdict of guilty as charged in the second count in the indictment of not less than two years nor more than five years, defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton, Deputy Attorney General Harrison Lewis, and Staff Attorney James E. Magner, Jr., for the State.*
*Benjamin S. Marks, Jr., for defendant appellant.*

PARKER, C.J.   When the defendant, an indigent, made his entries of appeal in the trial court, the trial court entered an order commanding Guilford County to pay for and furnish to him a transcript of the trial, and also directed Guilford County to pay for the mimeographing of the record of the trial and the brief of the defendant in the same manner as is done in the case of solvent defend-

ants. The court also entered an order appointing and directing the defendant's trial attorney to perfect his appeal, file a brief, and argue his case in the Supreme Court. All of this was done at the expense of the taxpayers of Guilford County.

The State introduced evidence; the defendant introduced no evidence.

Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence. The State's evidence, considered in the light most favorable to it and giving it the benefit of every reasonable inference to be drawn therefrom, tends to show the following facts: Charles T. Brown Truck Lines, Inc., had established several bank checking accounts in the city of Greensboro. One such account was a Federal tax account with the North Carolina National Bank. Mrs. Mae Brown and Mrs. Julia Brown were the only persons authorized to sign checks on the North Carolina National Bank account of Charles T. Brown Truck Lines, Inc. The check book of Charles T. Brown Truck Lines, Inc., containing its Federal tax account with the North Carolina National Bank was kept in the left-hand desk drawer in its business office in Greensboro, which was separate from the rest of the building. This check book contained printed checks of Charles T. Brown Truck Lines, Inc. After the close of business on 3 March 1967 the glass was knocked out of the rear door of its business office. This break-in was discovered on the morning of 4 March 1967. On 8 March 1967 this firm's business office was broken into again. On 15 March 1967 the North Carolina National Bank notified the firm that its Federal tax account with it was overdrawn. Thereafter the firm discovered that six checks were missing from its check book containing its Federal tax account with the North Carolina National Bank. The evidence tends to show that three of these checks were taken on the first break-in and three additional checks were taken on the second break-in.

Before 5 p.m. on 4 March 1967 a man went into the A & P Store on Commerce Street in the city of Greensboro and bought some groceries, for which he tendered the check described in the first count of the indictment and received for that check $65 in goods and money. An employee of the A & P Store in Greensboro put the check in cash receipts which were turned in at the end of the day and put in the safe and subsequently deposited in the bank.

Several days later the same man who passed the check in the A & P Store on 4 March 1967 went into the store to buy a broom, cigarettes, and cleaning stuff and tendered in payment a check drawn on the same account. When he did so, the checker, John William Wyrick, Jr., took this check to Mr. Clendenin, the store manager,

and told him that he had cashed a similar check several days previously. Mr. Wyrick does not remember the individual who gave him the second check. It was the similarity of the second check that he remembered and not the individual. When the second check was presented, he called the manager because the person who presented the second check was the same person who presented the first check.

The check which was passed with the A & P Store dated 3 March 1967 is marked State's Exhibit No. 1. This check was shown to Mr. Clendenin, who examined it and recognized it by his initial "F" which appears on the back of the check. This check was returned unpaid. The A & P Store did not lose $65 on this check. Mr. Clendenin did, because he had to make up the loss to the store. On 6 March 1967 he saw the defendant in the A & P Store on Commerce Street. His checker, John William Wyrick, Jr., approached him with a check on Charles T. Brown Truck Lines, Inc., and refreshed his memory that he had cashed a check several days previously for this boy. Mr. Clendenin inquired of the boy who had the second check for identification, and the boy answered, "I do not have any." The boy had purchased a carton of cigarettes and a broom, but Mr. Clendenin refused to cash the check. Mr. Clendenin told the police that he thought the boy who was attempting to pass the second check was about 5'6" or 7" tall, light colored, and 17, 18, or 19 years old. After he had described this boy to the police officers of Greensboro, they showed him a picture which Clendenin positively identified as the defendant.

The State offered further evidence tending to show that the signature in the lower right-hand corner of the check marked for identification as State's Exhibit No. 1 is not the signature of anyone authorized to sign checks for Charles T. Brown Truck Lines, Inc., on their Federal tax account with the North Carolina National Bank.

The State proposed to offer in evidence a confession of defendant to R. D. Huckabee, a member of the Greensboro police department. Whereupon, the trial court excused the jury and, in its absence, heard the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of defendant's confession, which is the correct procedure as set out in *S. v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; and *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572. Upon the *voir dire* in the absence of the jury, the trial court heard the testimony of police detectives Eli Welch and R. D. Huckabee and of the defendant. The officers testified that they warned defendant fully of his constitutional rights before defendant made any statement. Defendant, testifying in his own behalf on the *voir dire,* testified in substance: He could not recall whether Huckabee had ad-

vised him of his constitutional rights. He would not say "yes" or "no." He could not remember. After listening to the evidence on the *voir dire,* the trial court found the following facts:

> "I'll find that these, the statements made by the defendant to Officers Welch and Huckabee were freely and voluntarily made and that no inducements or threats of any kind were offered or made, against the defendant and that he was fully advised of his right to remain silent and that anything he said could be used against him in a court of law, that he had the right to the presence of an attorney and that if he couldn't afford one an attorney would be furnished for him before any questioning of him was made and that he waived all of these rights and that none of his constitutional rights were violated."

The findings of fact of the trial court are fully supported by competent evidence. The trial judge ruled that the confession was admissible in evidence, and we agree. *S. v. Rogers, supra.*

When the jury was recalled into the courtroom, Eli Welch without objection testified in substance as follows: He advised defendant that a man in the A & P Store was able to identify his picture as being the man who attempted to cash another check. Defendant told him that he (defendant) might as well go on and tell the truth about the situation and get it over with. Defendant stated that he went into Mr. Brown's office between 7 and 7:30 p.m. on 3 March 1967. He stated that he broke the glass out of the rear door, reached in and unlocked it, and went in and took three checks out of a check book which was in a desk. He took these checks out, went back out, and locked the door. Defendant stated that on 8 March 1967 he went back into this place by breaking another glass and reaching in and unlocking the door, and that he took three more checks out. He also stated that he cashed a check, which he wrote out himself, at the North Carolina National Bank in the amount of $76. He also stated that he cashed a check at the A & P Store on Commerce Street, and that he went back the following Monday and purchased a broom and a carton of cigarettes and attempted to cash another check, but the man refused to cash it and he got scared and threw the checks away. At the time defendant made these statements he was in the county jail and locked in, and the conversation took place in a small room where people walk in and out. The defendant also stated that when he went back to the A & P Store on the second occasion he got scared and tore up the checks. Officer Huckabee testified without objection that he showed to defendant the check marked State's Exhibit No. 1, and that defendant told him he had made that check. He said he cashed it at the A & P Store on Com-

merce Street. The defendant stated that he just presented the check and endorsed it, and that he made a purchase and paid for the merchandise with the check. He told him he represented himself to be James E. Smith, Jr., and that he endorsed the check James E. Smith, Jr. Defendant further stated that on Monday he went back and attempted to cash another check when he tried to make a purchase, and that this check was questioned. He stated that he got scared and left and tore up the checks and destroyed them.

The State's evidence was amply sufficient to permit a jury to find (1) a false writing of the check described in the first count of the indictment; (2) an intent to defraud on the part of defendant who falsely made the said check; and (3) the check as made was apparently capable of defrauding. These are the three essential elements necessary to constitute the crime of forgery. *S. v. Keller,* 268 N.C. 522, 151 S.E. 2d 56; *S. v. Phillips,* 256 N.C. 445, 124 S.E. 2d 146; *S. v. Dixon,* 185 N.C. 727, 117 S.E. 170; Annot. 164 A.L.R. 621; 23 Am. Jur., Forgery § 6.

G.S. 14-120 in relevant part reads:

> "If any person, directly or indirectly, whether for the sake of gain or with intent to defraud or injure any other person, shall utter or publish any such false, forged . . . check . . .; or shall pass or deliver, or attempt to pass or deliver, any of them to another person (knowing the same to be falsely forged . . .), the person so offending shall be punished by imprisonment. . . ."

Uttering a forged instrument consists in offering to another the forged instrument with the knowledge of the falsity of the writing and with intent to defraud. 2 Wharton's Criminal Law and Procedure, Anderson Ed., Forgery and Counterfeiting § 648. This is said in 23 Am. Jur., Forgery § 5: "But, generally, the mere offer of the false instrument with fraudulent intent constitutes an uttering or publishing, the essence of the offense being, as in the case of forgery, the fraudulent intent regardless of its successful consummation; . . ." G.S. 14-119 prohibits the forgery of bank notes, checks and other securities. G.S. 14-120 also prohibits the uttering of forged paper or instruments containing a forged endorsement. In this State, by virtue of G.S. 14-120, uttering is an offense distinct from that of forgery which is defined in G.S. 14-119.

It is manifest from the record and the judge's charge that the second count in the indictment charging uttering a forged check refers to the same check described in the first count in the indictment. The State's evidence was amply sufficient to permit a jury to find

that the defendant feloniously uttered and published a forged check in offering to the A & P Store on Commerce Street the forged check with a knowledge of the falsity of the writing and with intent to defraud, and procured by means of this forged check $65 in merchandise and cash. These are the essential elements necessary to constitute the crime of uttering a forged check.

We realize that there are contradictions and discrepancies in the State's evidence. However, contradictions and discrepancies, even in the State's evidence, are for the jury to resolve, and do not warrant nonsuit. 2 Strong, N. C. Index 2d, Criminal Law, § 104.

Considering the State's evidence in the light most favorable to it and giving it the benefit of every reasonable inference to be drawn therefrom (2 Strong, N. C. Index 2d, Criminal Law § 104), it is clear that the total combination of facts shown by the evidence shows substantial evidence of defendant's guilt of all essential elements of the felonies charged in both counts of the indictment and is amply sufficient to carry the cases charged in both counts of the indictment against him to the jury and to support the verdict of guilty as to each count in the indictment. The trial judge properly overruled defendant's motion for judgment of compulsory nonsuit.

We have carefully examined other alleged errors of the trial court in admitting certain testimony and other alleged errors in its charge. This Court has often emphasized its reluctance to lengthen its opinions with tedious considerations of numerous lesser points raised in the brief. While defendant's well-prepared brief presents contentions involving fine distinctions, a careful examination of the assignments of error discloses no new question or feature requiring extended discussion. Such being the case, it would serve no useful purpose to take the same old stick to beat the same old bush to force the same old rabbit out for the same old run (a paraphrase of a graphic expression of Justice Brogden, a former learned judge and stylist of this Court). The record here appears to be free from substantial error, and the charge of the court, when considered as a whole, correctly presented to the jury the law applicable to the facts in evidence fairly, impartially, and accurately. The verdict of the jury and the judgment of the court were firmly founded on ample and convincing evidence. Separate judgments, each complete within itself were pronounced on separate counts in the indictment. See *S. v. Stonestreet*, 243 N.C. 28, 89 S.E. 2d 734. The two sentences imposed here are to run concurrently. *S. v. Duncan*, 208 N.C. 316, 180 S.E. 595; *In re Parker*, 225 N.C. 369, 35 S.E. 2d 169; *S. v. Efird*, 271 N.C. 730, 157 S.E. 2d 538.

We note that in the indictment it is alleged "that Henry Robert Lee Greenlee alias James C. Smith alias Charles T. Brown. . . ."

Defendant testified on the *voir dire* under the name of Henry Robert Lee Greenlee and stated that he was the defendant in the case. The checks were signed and endorsed "James E. Smith, Jr." The defendant's correct name appears in the indictment and in the record as "Henry Robert Lee Greenlee." Any possible defect in the name of the alias is not fatal. 42 C.J.S., Indictments and Informations, § 41. See also G.S. 15-153 and G.S. 15-155.

In the trial below we find

No error.