STATE OF NORTH CAROLINA v. JAMES HENRY BROWN

No. 7010SC577

(Filed 21 October 1970)

1. Forgery § 1— elements of forgery

The three elements necessary to constitute the common law offense of forgery are: (1) a false making or other alteration of some instrument in writing; (2) a fraudulent intent; and (3) an instrument apparently capable of effecting fraud.

2. Forgery § 2— instrument capable of effecting a fraud — deed of trust subordination agreement

Defendant's forgery of a signature on a deed of trust subordination agreement constituted the forgery of an instrument capable of effecting a fraud, where (1) the subordination agreement, if the signatures were genuine, would have been valid and enforceable against the persons whose signatures were forged and (2) the agreement was capable of misleading a lending institution to its prejudice.

3. Evidence § 3— matters of common knowledge

It is common knowledge that before advancing funds to be secured by a mortgage on real estate, parties often insist on supplementary instruments which clarify title to the property or specifically establish the priority of the mortgage.

APPEAL from *Bailey, J.,* 21 May 1970 Session of WAKE County Superior Court.

Defendant was tried under a bill of indictment charging him in separate counts with forgery and with the uttering of a forged document.

The State presented evidence which tended to show the following:

On 8 May 1964 Zebulon E. Helms and wife, Ethel A. Helms (Mr. and Mrs. Helms), executed and delivered to Raleigh Savings and Loan Association (Raleigh Savings) a deed of trust on a certain parcel of real estate located in Wake County and owned by them. The deed of trust secured a note in the amount of $14,700. It was recorded on 20 May 1964 in Book 1597, Page 281 of the Wake County Registry. In June of 1966 Mr. and Mrs. Helms conveyed the property to John B. Monday and wife, Mavis R. Monday (Mr. and Mrs. Monday). To secure all or a portion of the purchase price, Mr. and Mrs. Monday executed and delivered a deed of trust in favor of Mr. and Mrs. Helms. This deed of trust was recorded on 10 June 1966 in Book 1718, Page

297 of the Wake County Registry. Thereafter the property was conveyed by Mr. and Mrs. Monday to defendant and his wife, Geraldine G. Brown, who expressly assumed the obligation of the deed of trust to Raleigh Savings and executed and delivered a deed of trust on the property to Mr. and Mrs. Monday, securing an indebtedness of $6,500. This deed of trust was recorded on 1 September 1967 in Book 1783, Page 409 of the Wake County Registry.

On or about 6 November 1969 defendant delivered to Mr. Monday an instrument entitled "Subordination Agreement" for the purpose of having it executed by him and Mrs. Monday. The instrument provided that in consideration of $10 Mr. and Mrs. Helms and Mr. and Mrs. Monday agreed that their deeds of trust, referred to above, were therein subordinated to a renewal deed of trust from defendant and wife to Raleigh Savings, "with the full understanding that the renewal deed of trust constitutes a first lien on said property and takes precedent over the deeds of trust held by us as referred to herein." At the time the instrument was delivered by defendant to Mr. Monday, signatures, purporting to be those of Mr. and Mrs. Helms, were affixed thereto. Also, a notary certificate appearing on the instrument and certifying that Mr. and Mrs. Helms had appeared and acknowledged the execution of the agreement, had been signed and notarial seal affixed by Betty J. Bynum, an employee of Brown Property Management, Inc. Defendant represented to Mr. Monday that the instrument had been signed by Mr. and Mrs. Helms.

Mr. and Mrs. Helms denied that the signatures appearing on the document were theirs. Betty J. Bynum, the notary public who had purported to take their acknowledgment, stated that she did not see Mr. and Mrs. Helms sign the instrument. It had been left on her desk by Mr. Brown [defendant] with a note on it for her to notarize Mr. and Mrs. Helms' signatures.

Without objection by defendant, Mr. Charles L. Fulton, attorney for Mr. and Mrs. Monday, testified at length as to his understanding of the legal significance of the purported agreement, stating that had it been completed, subsequent advances made by Raleigh Savings would have taken precedence over the deeds of trust of Mr. and Mrs. Helms and Mr. and Mrs. Monday; otherwise their deeds of trust would have had priority over subsequent advances made by Raleigh Savings.

At the close of the State's evidence defendant moved for judgment as of nonsuit as to both counts in the bill of indictment. His motion was allowed as to the uttering count and denied as to the count charging forgery. Defendant offered no evidence. The jury returned a verdict of guilty of forgery. Judgment was entered thereon imposing a prison sentence of four months, suspended for a period of three years upon condition that defendant pay the cost and abide by certain probationary conditions. Defendant appealed.

*Robert Morgan, Attorney General, by William Lewis Sauls, Staff Attorney, for the State.*

*Tharrington & Smith by Roger W. Smith for defendant appellant.*

GRAHAM, Judge.

Defendant's sole assignment of error is to the court's denial of his motion for nonsuit as to the forgery count.

[1, 2] The common law definition of forgery obtains in this State since the statutes relating to forgery do not define it. *Trust Co. v. Casualty Co.,* 231 N.C. 510, 57 S.E. 2d 809. Three elements are necessary to constitute the offense: (1) There must be a false making or other alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud. *State v. Greenlee,* 272 N.C. 651, 159 S.E. 2d 22; *State v. Keller,* 268 N.C. 522, 151 S.E. 2d 56; *State v. Phillips,* 256 N.C. 445, 124 S.E. 2d 146; *State v. Diggs,* 6 N.C. App. 732, 171 S.E. 2d 230. Defendant does not challenge the sufficiency of the State's evidence to establish the first two necessary elements. He contends, however, that the third element is lacking because the subordination agreement could not affect the rights or liability of any party.

The subordination agreement is unquestionably a genuine document, save for the falseness of the signatures of Mr. and Mrs. Helms. Defendant's argument that it could not affect the rights or liabilities of anyone is based, not upon the terms of the instrument itself, but upon the terms of the original deed of trust from Mr. and Mrs. Helms to Raleigh Savings. The language relied upon is as follows:

"[A]nd provided further that the note hereinbefore described and all such subsequent loans and advances, costs

and expenses shall mature and become due and payable not later than twenty years from the date hereof, it being understood and agreed that if any note, loan, advance or other obligation secured hereby, whether representing the initial indebtedness or additional advances, is reduced by partial payments, *further loans or advances may be made by the Association, at its election, to the parties of the first part upon request by them within the maximum amount and within the time limit above set forth, and such further obligations or advances shall be secured hereby to the same extent as the original indebtedness hereunder. . . .*" (Emphasis added).

Defendant reasons that the above language gives Raleigh Savings the right to make advances up to the original amount of the loan, and that when made, the future advances relate back under the original deed of trust, and take priority over any intervening encumbrances. Simply stated, defendants contend that the instrument in question, if genuine, would have given Raleigh Savings no rights in addition to those which it already had under its original deed of trust; nor would it have operated to the prejudice of the holders of the intervening deeds of trust since their security was already subordinate to future advances made by Raleigh Savings under the terms of its first deed of trust.

The State argues the case solely on the grounds of defendant's contention. It contends that any future advances made under Raleigh Savings' first deed of trust would not have related back and taken priority over the intervening deeds of trust, unless subordinated by a genuine instrument such as the one allegedly forged by defendant. The State cites G.S. 45-70(b) in support of its position. Defendant counters saying that the provisions of that statute are inapplicable to the situation here; and further, that G.S. 45-70(b) became effective on 1 October 1969 and cannot affect the rights and liabilities established by deeds of trust which were recorded prior to that date.

Thus, the parties have presented us with a question of real estate law, presumably of first impression in this jurisdiction, as determinative of the issue raised on this appeal. We do not, however, view the question presented as essential to a determination of whether the instrument here in question could be the subject of forgery.

State v. Brown

In 36 Am. Jur. 2d, Forgery, § 24, p. 693, it is stated:

"A writing or instrument in order to constitute a forgery must possess some apparent legal efficacy. It is sufficient, however, to constitute a forgery if there is a reasonable possibility that the false writing or instrument may operate to cause injury, although no actual injury therefrom is necessary."

In accord: *State v. Cross and White,* 101 N.C. 770, 7 S.E. 715, Aff'd., *Cross v. N.C.,* 132 U.S. 131, 10 S. Ct. 47, 33 L. Ed. 287.

[3] It is common knowledge that before advancing funds to be secured by a mortgage on real estate, parties often insist on supplementary instruments which clarify title to the property or specifically establish the priority of the mortgage. This is true even where the rights and priorities of the parties could be established without the assistance of any supplementary instrument. This wise practice should be encouraged. A quit claim deed or a clarifying agreement can often prevent an expensive and time consuming lawsuit. This case is an illustration. If Raleigh Savings had made advances solely relying on the language of their first deed of trust, it would have been inviting a future dispute as to the priority of the advances. That this is so is illustrated by the uncertainty which surrounds the question of the priority of mortgages to secure future advances. (See generally Note, Mortgages to Secure Future Advances, 31 N.C.L. Rev. 504; Note, Registry of Subsequent Encumbrance as Notice to Prior Mortgagee in Mortgage to Secure Future Advances, 6 Va. L. Rev. 280; Osborne, Mortgages, §§ 116, 118, 119). It is also illustrated by the testimony of the attorney for Mr. and Mrs. Monday. He clearly interpreted the instrument in question as necessary in order to establish the legal priority of any advances made by Raleigh Savings subsequent to the recordation of its first deed of trust. The Attorney General strenuously advances the same interpretation. Under these circumstances we cannot hold that there was no reasonable possibility that the instrument in question, if genuine, could operate to cause injury.

In *People v. Munroe,* 100 Cal. 664, 35 P. 326, the instrument alleged to have been forged was an assignment of the unearned salary of a school teacher. It was conceded that such an assignment was void and unenforceable in court. The court held that the writing could nevertheless be the basis of a charge of forgery. The court observed: "For the purposes of the case, we conceded

at the outset that this instrument would be declared void by a court as against public policy; but, if that question were a live issue in the case, this contract might be declared valid upon the ground that a teacher in the public schools is not a public officer. Certainly, the law as to that point is not so plain but that an ordinary layman, in the exercise of the greatest care, might not be defrauded in taking an assignment of a public school teacher's unearned salary."

In *People v. Gayle,* 202 Cal. 159, 259 P. 750, defendant contended that certain contracts for the sale of land could not be subjects of forgery because they were unrecorded and therefore unenforceable. In rejecting his contentions, the court quoted from *People v. Munroe, supra,* where it was said: "To declare the law to be that all contracts which are not enforceable, because against the policy of the law, are not the subject of forgery, would be offering a *carte blanche* to the professional forger, of which he would not be slow to take advantage. . . ."

Other cases which emphasize that the determinative factor is a possibility that the instrument may operate to cause injury, rather than its technical legal effect, include the following: *Earnest v. State,* 40 Ala. App. 344, 113 So. 2d 517; *Hall v. State,* 31 Ala. App. 455, 18 So. 2d 572; *People v. Morgan,* 140 Cal. App. 2d 796, 296 P. 2d 75; *People v. Baker,* 100 Cal. 188, 34 P. 649; *Allgood v. State,* 87 Ga. 668, 13 S.E. 569; *State v. Van Auken,* 98 Iowa 674, 68 N.W. 454; *State v. Reed,* 141 Mo. 546, 42 S.W. 1149; *State v. Daems,* 97 Mont. 486, 37 P. 2d 322; *State v. Brett,* 16 Mont. 360, 40 P. 873; *Commonwealth v. Wheeler,* 200 Pa. Super. 284-300; *Commonwealth v. Brown,* 96 Pa. Super. 13; *Honeycutt v. State,* 150 Tex. Crim. 140, 199 S.W. 2d 657; *Carter v. State,* 135 Tex. Crim. 457, 116 S.W. 2d 371; *King v. State,* 42 Tex. Crim. 108, 57 S.W. 840; *Gordon v. Commonwealth,* 100 Va. 825, 41 S.E. 746; *Hendrick v. Commonwealth,* 32 Va. (5 Leigh) 707; *Lurye v. State,* 221 Wis. 68, 265 N.W. 221.

[2] The instrument in question here would have been valid and enforceable against Mr. and Mrs. Helms, had their signatures been genuine. It would have served as conclusive evidence of the rights of Raleigh Savings, rendering it unnecessary for Raleigh Savings to rely upon the uncertain legal effect of its first deed of trust. "An instrument in writing of which forgery can be predicated is one which, if genuine, could operate as the foundation of another man's liability or *the evidence of his rights.* . . ." (Emphasis added). *Barnes v. Crawford,* 115 N.C.

76, 78, 20 S.E. 386, 387. The instrument here, because of its nature, was capable of misleading Raleigh Savings to its prejudice, irrespective of its ultimate legal effect with respect to the priority of the various deeds of trust. "If, therefore, the false and fraudulent paper writing be such as that it might, from its nature, and the course of business, deceive or mislead to the prejudice of another person, the offense of forgery would be complete." *State v. Covington,* 94 N.C. 913.

We have not overlooked the authorities relied upon by defendant. *Barnes v. Crawford, supra,* was a civil action for slander. The defendant (a candidate for Congress) was alleged to have accused plaintiff of signing defendant's name to a card which called for certain congressional action. The court held that the card could not be the subject of forgery. It is obvious that the representations contained on the card could have had no possible legal effect. In *State v. Gherkin,* 29 N.C. 206, the defendant, who was co-maker of a note, was charged with falsely signing the name of a witness. The court noted that the instrument in question did not require a subscribing witness and no one could be defrauded if the witness' signature were false. The false signature would have operated to no one's prejudice unless, of course, the signature of the defendant had been false. In *State v. Lytle,* 64 N.C. 255, the bond allegedly forged was void on its face. We conclude that the factual situations in each of these cases are clearly distinguishable from the facts of the case now before us.

In our opinion the State established that the written instrument was "apparently capable of effecting a fraud" within the meaning of that phrase as interpreted by the various authorities cited herein. We conclude therefore that the trial judge correctly overruled defendant's motion for judgment as of nonsuit as to the forgery count.

No error.

Judges BROCK and MORRIS concur.