STATE OF NORTH CAROLINA v. CARL STEVEN BAUGUESS

No. 7123SC670

(Filed 2 February 1972)

1. **Constitutional Law § 30— speedy trial — delay of ten months between crimes and issuance of warrant**

    Defendant was not denied the constitutional right to a speedy trial on charges of forgery and uttering a forged check by a delay of more than ten months between the commission of the crimes and the issuance of a warrant charging defendant with the crimes, where the cause of the delay was that police officers were waiting for a report from F.B.I. handwriting experts in Washington as to whether the checks in question and other checks drawn on the same account were forgeries.

**2. Forgery § 1— elements of forgery**

    The three elements necessary to constitute the offense of forgery are: (1) a false making or other alteration of some instrument in writing; (2) a fraudulent intent; and (3) an instrument apparently capable of effecting a fraud.

**3. Forgery § 2— sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for forgery of a check where it tended to show not only that the purported signer of the check in question had no authority to sign a check on the account upon which it was drawn, but that he was a fictitious person, and that defendant was the person who was in possession of and actually uttered the check.

APPEAL by defendant from *Exum, Judge,* 21 June 1971 Criminal Session of Superior Court held in WILKES County.

Defendant pleaded not guilty and was tried on charges made by bill of indictment, proper in form, which charged him in separate counts with the forgery and with the uttering of a forged check. The check was particularly described in each count as follows:

"SECOND STREET BP
P. O. Box 1327
N. Wilkesboro, N. C. 28659                                          602
                                                          Date 6-1 1970
Pay to the order of Bobby Miller                             $75.00
Seventy-Five and 00/100 — — — — — — — — DOLLARS
The Northwestern Bank
North Wilkesboro, N. C. 28659
':0531 ''' 0216': 0011026524                        C. A. Swofford
                                                      0000007500"

The State's witnesses testified in substance as follows:

The cashier of Lowe's Super Market in North Wilkesboro testified that defendant was the person who had presented the check to her on 1 June 1970 in payment for merchandise costing approximately $4.00. The cashier accepted the check, which was identified and introduced in evidence as State's Exhibit 1, and gave defendant cash for the balance. At the time, the cashier did not know defendant, did not know anyone named Bobby Miller or anyone named C. A. Swofford, and did not know who ran Second Street BP, but had cashed checks for that firm. The check was sent to the Northwestern Bank to be cashed, but pay-

ment was refused by the bank because the signature "C. A. Swofford" was not authorized, and Lowe's Super Market lost the amount of the check.

An assistant cashier of the bank testified that the bank's records disclosed that on 1 June 1970 Second Street BP had a business account at the bank which had been assigned number 0011026524; that there were three authorized signatures on the account, being those of Ronald Hamby and Dean Spears, partners, and Rebecca Riddle, bookkeeper; that the signature, C. A. Swofford, on the check was not one of the signatures authorized on the account, and for that reason the check was not paid when presented to the bank.

Ronald Hamby testified that sometime prior to 1 June 1970 he and a partner, Dean Spears, ran a service station known as "B.P. Service Station on Second Street." They had a bank account at that time and State's Exhibit 1 was one of their checks. When they closed the service station, they left some blank checks in the building. Hamby later went back and found their checkbook was gone. Only Hamby, his partner, Dean Spears, and the bookkeeper, Rebecca Riddle, had authority to draw checks on the Second Street BP account at the bank. Hamby did not give the check, State's Exhibit 1, to anyone and did not authorize anyone to draw the check. Neither Hamby nor his concern owed Bobby Miller any money for anything and Hamby did not recollect anybody by the name of Bobby Miller. Hamby knew Carl Swofford, but did not know his initials. Carl Swofford was the Sinclair distributor and owned the station they were renting. Hamby knew defendant prior to 1 June 1970. Defendant and his father and brothers ran a place of business across the street and approximately 100 yards from Hamby's station.

The Chief of Police of North Wilkesboro testified that he had made an investigation and had been unable to find any person in the county by the name of C. A. Swofford. He knew Carl Swofford and Jim Swofford, who were brothers and who were the BP distributors for the area, but neither of them had a middle initial "A." The Police Chief testified, without objection, that he had talked to Carl Swofford and to Jim Swofford and "Jim Swofford said he knew all the Swoffords in the county and he did not know of one by that initial."

State v. Bauguess

Defendant did not introduce evidence. The jury found him guilty on both counts, and from sentences imposed, defendant appealed.

*Attorney General Robert Morgan by Staff Attorney Ernest L. Evans for the State.*

*Larry S. Moore for defendant appellant.*

PARKER, Judge.

[1] The crimes with which defendant was charged were alleged in the bill of indictment to have been committed on 1 June 1970. Warrant for his arrest on these charges was issued on 16 March 1971. He was given a preliminary hearing in the district court on 9 April 1971. The bill of indictment was returned as a true bill and he was brought to trial at the 21 June 1971 session of superior court, which was the first regularly scheduled session of superior court for trial of criminal cases to be held in Wilkes County after defendant's arrest. Prior to impaneling of the jury, defendant moved to quash the indictment on the grounds he had been denied his constitutional right to a speedy trial. The motion was overruled and in this we find no error.

Before ruling on the motion to quash, the trial judge conducted a voir dire examination of the Chief of Police of North Wilkesboro, who testified that within 30 days after 1 June 1970 he had information which caused him to suspect defendant of uttering the check, but did not then have a witness to identify defendant as the man who did so; that a number of checks had been stolen from the BP Station on Second Street; that he could get no handwriting expert in the State to work on these checks and had had to send them to the F.B.I. in Washington; and that the checks had been gone most of the time, back and forth, to the F.B.I. Laboratory in Washington. Under these circumstances, we hold that defendant failed to show that the delay in issuing the warrant was either deliberately or unnecessarily caused by the prosecution or that the length of the delay was such as to create a reasonable possibility of prejudice to defendant. "The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case." *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274.

[2, 3] There was also no error in submitting this case to the jury under both counts in the bill of indictment. Insofar as the first count is concerned, three elements are necessary to constitute the offense of forgery: (1) There must be a false making or other alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud. *State v. Greenlee*, 272 N.C. 651, 159 S.E. 2d 22; *State v. Brown*, 9 N.C. App. 498, 176 S.E. 2d 881. The State's evidence here tended to show not only that C. A. Swofford, the purported signer of the check in question, had no authority to sign a check on the account upon which it was drawn, but that, indeed, he was a fictitious person. "If the name signed to a negotiable instrument, or other instrument requiring a signature, is fictitious, of necessity, the name must have been affixed by one without authority, and if a person signs a fictitious name to such instrument with the purpose and intent to defraud—the instrument being sufficient in form to import legal liability—an indictable forgery is committed." *State v. Phillips*, 256 N.C. 445, 124 S.E. 2d 146; *accord, State v. Dixon*, 185 N.C. 727, 117 S.E. 170; Annot., 49 A.L.R. 2d 852. In *State v. Phillips, supra,* Moore, J., speaking for the Court, quoted with approval from 37 C.J.S., Forgery, Section 82, p. 94, as follows:

> "Evidence that the name signed to an instrument is that of a fictitious person is admissible to prove that the instrument is a forgery, and any circumstantial evidence tending to prove that the name is that of a fictitious person is likewise admissible. Thus persons so situated that they would probably know the signer if he existed may testify that they do not know of any such person. Similarly, evidence as to the result of inquiries made for persons whose names appear on an instrument is admissible to show their nonexistence, although the person making the inquiries may have been unacquainted with the place, or the search may not have been extensive."

Thus, here the evidence would support a jury finding that when someone affixed the signature, C. A. Swofford, to the check, a forgery was committed. There was direct evidence that the defendant was the person who was in possession of and actually uttered the check, obtaining value therefor. This evidence was sufficient to support a jury finding that defendant had him-

self forged the check. *State v. Welch,* 266 N.C. 291, 145 S.E. 2d 902; 36 Am. Jur. 2d, Forgery, Section 44, p. 706.

We have examined appellant's remaining assignments of error and find no error prejudicial to defendant.

**No error.**

Judges CAMPBELL and MORRIS concur.