STATE OF NORTH CAROLINA v. WILLIAM HAZARD SHEFFIELD
AND ERNEST LEE PARTIN.

(Filed 25 November, 1959.)

**1. Constitutional Law § 33:   Criminal Law § 80—**

Where a defendant voluntarily testifies in his own behalf he is subject to cross-examination and impeachment as any other witness, since the constitutional inhibition against self-incrimination, Art. I, Sec. 11, of the Constitution of North Carolina, applies to compulsion and does not protect a defendant when he voluntarily becomes a witness for the very purpose of having the jury consider his testimony in determining his guilt or innocence.

**2. Criminal Law § 80—**

Where a defendant testifies in his own behalf it is competent for the solicitor on the cross-examination to ask him for the purpose of impeachment if he had not theretofore been convicted and sentenced to imprisonment for another crime, and the affirmative answer of the defendant to such question is competent as affecting his credibility as a witness, and in its charge the court may state what each defendant admitted as a fact on such cross-examination.

**3. Criminal Law § 46—**

Flight is competent evidence to be considered by the jury in connection with other circumstances in passing upon the question of defendant's guilt.

**4. Same—**

Where defendants as witnesses in their own behalf have testified on cross-examination as to the fact that they had fled the State, it is proper for the court to charge the jury on the contention of the State based upon such flight without having instructed defendants of their right to offer rebuttal evidence upon this specific aspect, it appearing that the court, when the State rested its case, advised defendants that they could put any witnesses they had on the stand, and there being no intimation by defendants that they had any witnesses to testify upon the matter.

APPEAL by defendants from *Sink, E. J.*, 16 February 1959 Term, of WAKE.

Criminal prosecution upon a bill of indictment charging defendants on 15 November 1958 with robbery with firearms and other dangerous weapons, implements or means, a violation of G.S. 14-87.

Plea: Not Guilty by both defendants. Verdict: Each defendant is guilty as charged.

From judgments of imprisonment of each defendant, each defendant appeals.

*Malcolm B. Seawell, Attorney General, and Claude L. Love, Assistant Attorney General for the State.*

*Taylor & Mitchell for defendants, appellants.*

PARKER, J. The State's evidence shows these facts: About 10:45 p. m. on 15 November 1958 Ray Murray saw defendants at the corner of Swain Street in the city of Raleigh, when he was going west in the 500 block of East Edenton Street. He stepped out into the culvert to go around them. When he had passed them about 15 or 20 feet, defendants turned, and one of them hollered, and asked what he had on him. He replied, "nothing." They came towards him, and he started running. Murray testified: "They jumped me, and drew a knife on me and one of them hit me in the stomach and one of them went through my pockets. They put the knife across my neck, and I was struggling with both of them at the time, when one of them struck me in the stomach. I went to the ground then and was rolling over trying to get up and they both fled then around the corner through that alleyway between Edenton Street and New Bern Avenue, next to Swain Street. I had probably about $16.00 on me at the time. . . . My pocketbook was taken, and I never recovered it, and I never recovered the money. I don't know how many times they hit me but they did hit me and kept pounding on me until I was down on the ground. They were pounding me with their fists. I was not struck by anything while I was on the ground, I was only just kicked. I was kicked while I was on the ground, and was kicked in the stomach." About 9:30 on the 17th or 18th of November 1958, Murray identified defendants in a lineup of five men as the men who robbed him.

Defendant Partin testified in his own behalf as follows: "At the time of the robbery, which was at about the same time another robbery took place here in town, I believe, I think another robbery took place that same night here in Raleigh. All I can say is, we were both at my grandfather's house at the time. . . . I was at his house at the time of this robbery, and I don't really know anything about it, and I guess that's it." On cross-examination he testified: "Right after this happened, a man was robbed, and I was tried and convicted in this court, and was given 18 months on the road for larceny. . . . Two terms of court ago, the judge continued this case, as I did not have a lawyer, but I did not say anything about witnesses, I said a lawyer. Right soon after that court, I escaped from prison, and we were apprehended 20 hours afterwards."

Defendant Sheffield testified in his own behalf as follows: "Well,

as Mr. Ernest Partin has already stated, both of us were over at his grandfather's house on the 15th. We left there that day, and returned there just before dark; it was around 7:00 or 7:30, I don't know the exact time we got back there. Then we stayed at the house there all that night. . . . We spent the night there, all that time we were down there. That's about it." On cross-examination, he testified: "Just last week I received a sentence of 2 to 4 years for armed robbery in this court for a robbery which occurred about 20 minutes after this robbery occurred. . . . We were brought into this courtroom at the January Term of Court, and the case was continued so that we could get some witnesses. And when the case was called, we had escaped. We were later brought back here, and tried last week for armed robbery."

The only assignments of error are to the charge of the court to the jury.

The first assignment of error is to this part of the charge: "The State alleges that, according to the evidence here, that they were involved in another robbery on the same night for which they were tried and penalized."

After the State had rested its case, the learned judge, in accord with G.S. 8-54, stated to the defendants, "either one of you defendants may take the stand and testify in your own behalf, if you wish to do so, but you do not have to do so, and if you do not testify in your own behalf, it will not be considered by the jury to your prejudice so I will instruct them, but whether you will testify or not is for each of you to say, and this applies to you Sheffield and to you Partin. . . . If you have any witness you may put him on the stand too." Whereupon, each defendant, according to the record, voluntarily and at his request, became a witness in his own behalf, and, therefore, was subject to cross-examination and impeachment as any other witness, and to the advantages and disadvantages of being a witness. G.S. 8-54; *S. v. Hawkins,* 115 N.C. 712, 20 S.E. 623; *S. v. Wentz,* 176 N.C. 745, 97 S.E. 420; *S. v. Colson,* 194 N.C. 206, 139 S.E. 230; *S. v. Farrell,* 223 N.C. 804, 28 S.E. 2d 560.

There is a distinction to be observed between the statement made by a prisoner on his preliminary examination before a magistrate under G.S. 15-89, and his testimony given under G.S. 8-54, as a witness on the trial of the cause. *S. v. Farrell, supra; S. v. Hawkins, supra.* On the former, he is advised of his rights, and such examination is not to be an oath. On the latter, the defendant, at his own request, but not otherwise, is competent but not compellable to testify,

and, of course, his testimony thus given is received under the sanction of an oath.

It is said in *S. v. Farrell, supra:* "The constitutional inhibition against compulsory self-incrimination, Art. I, Sec. 11, (North Carolina Constitution) is directed against compulsion, and not against voluntary admissions, confessions, or testimony freely given on the trial."

Each defendant voluntarily became a witness for himself for the very purpose of having the jury consider his testimony in determining his guilt or innocence. Having done so, it was proper for the Solicitor for the purpose of impeaching each defendant to ask each one on cross-examination, if he had not been convicted and sentenced to imprisonment for the crime of robbery. The answer of each defendant that he had been so convicted and sentenced for robbery was clearly competent as affecting his credibility as a witness. *S. v. Lawhorn,* 88 N.C. 634; *S. v. Holder,* 153 N.C. 606, 69 S.E. 66; *S. v. Colson, supra; S. v. King,* 224 N.C. 329, 30 S.E. 2d 230.

The challenged portion of the charge is merely a statement of what each defendant admitted as a fact on cross-examination, and the assignment of error thereto is overruled.

The only other assignment of error, except a formal one to the judgment, which is not discussed in defendant's brief, is to this part of the charge: "Since this alleged violation occurred, and the State contends that while awaiting trial they fled and the State contends, and the Court charges you that they having fled that is evidence to be considered by you as having bearing upon their guilt in this case, the State's contending that such flight has a bearing upon their guilt or innocence in this case, the State contending that because of their guilt they fled, and the State says and contends that you should be satisfied beyond a reasonable doubt that each of these defendants, William Hazard Sheffield and Ernest Lee Partin, is guilty as charged in the bill of indictment."

Defendant Partin testified on cross-examination: "Two terms of court ago, the judge continued this case, as I did not have a lawyer, but I did not say anything about witnesses, I said lawyer. Right soon after that court, I escaped from prison, and we were apprehended 20 hours afterward."

Defendant Sheffield testified on cross-examination: "We were brought into this courtroom at the January Term of Court, and the case was continued so that we could get some witnesses. And when the case was called, we had escaped. We were later brought back here and tried last week for armed robbery."

This Court said in *S. v. Payne*, 213 N.C. 719, 197 S.E. 573: "Flight is competent evidence to be considered by the jury in connection with other circumstances in passing upon the question of guilt," citing many decisions of the Court in support of the statement.

Defendants make this contention in their brief: "Appellants do not contend that evidence of flight from custody after indictment is not admissible against a defendant. Appellants do contend and argue on this appeal, however, that in the instant case where appellants were not represented by counsel, that it was error for the trial court to instruct the jury upon this principle where the court has not instructed appellants of their right to offer rebuttal evidence or testimony upon this matter."

Counsel for defendants have cited no authority to support their contention, nor do we know of any. Defendants in their brief have not a word as to how the testimony of some imaginary witness or witnesses — there is no suggestion they have any — could benefit them in any way on the question of flight from custody, which flight each defendant admitted on cross-examination. When the State rested its case, the judge told defendants, *inter alia*, if they had any witness, they could put him on the stand. No prejudicial error is shown as to this assignment of error, and it is overruled.

In the trial below, we find

No error.