STATE OF NORTH CAROLINA v. RICKEY STEVENSON
ALEXANDER AND GRADY WILSON

No. 69

(Filed 10 November 1971)

1. Arrest and Bail § 3— arrest without warrant — felony

In order to justify an arrest without a warrant under G.S. 15-41(2), it is not necessary to show that a felony was actually committed, but only that the officer had reasonable ground to believe that such an offense was committed.

2. Arrest and Bail § 3— arrest without warrant — probable cause — reasonable ground

The terms "probable cause," as used in the Fourth Amendment to the Federal Constitution, and "reasonable ground," as used in G.S. 15-41, are substantial equivalents having virtually the same meaning.

3. Arrest and Bail § 3— arrest without warrant — probable cause

An arrest without a warrant is based upon probable cause if the facts and circumstances known to the arresting officer warrant a prudent man in believing that a felony has been committed and that the person to be arrested is the felon.

4. Arrest and Bail § 3— arrest without warrant — probable cause

Police officers had probable cause to arrest defendants without a warrant for the armed robbery of a pharmacy where they had been given descriptions of the robbers, including their height, weight, estimated age, clothing, color and complexion, one defendant had been identified by an informer and from photographs by two eyewitnesses, and defendants and another had been identified as the robbers by a second informant who told the officer how he came into possession of such information and whose information had led to the conviction of seven persons within the past two years.

5. Arrest and Bail § 3— arrest without warrant — belief that defendants would evade arrest

In arresting defendants without a warrant for the crime of armed robbery, the very nature of the crime was sufficient to support a reasonable belief by the officers that defendants would "evade arrest if not taken into custody." G.S. 15-41(2).

6. Criminal Law § 66— lineup — in-court identification — independent origin

In-court identifications of defendants were competent, even if pretrial lineup procedures were improper, where there was evidence to show and the court found on voir dire that the in-court identifications were independent in origin and not based on the lineup.

7. Criminal Law § 161— necessity for exceptions

Assignments of error must be based on exceptions duly noted and may not present a question not embraced in an exception.

**8. Criminal Law § 34— cross-examination as to prior offenses**

When a defendant in a criminal case takes the stand, he may be impeached by cross-examination with respect to previous convictions of crime regardless of his age at the time of his previous convictions.

**9. Courts § 15; Infants § 10— fifteen-year-old defendant — felony — trial in juvenile court or superior court**

A fifteen-year-old defendant charged with the felonies of storebreaking and larceny — the punishment for which could be ten years — may either be processed as a juvenile or tried in the superior court.

**10. Criminal Law § 34; Infants § 10— prior offenses — "conviction" while a juvenile**

Answer by a defendant on cross-examination that he had been "convicted" of storebreaking and larceny when he was a juvenile was competent for impeachment purposes, and failure of the court to conduct a voir dire hearing to determine whether the charge was heard on a petition in juvenile court or on an indictment in superior court was not prejudicial error.

**11. Criminal Law § 101— recesses during trial — instructions to jury**

Defendant was not prejudiced by failure of the trial court to instruct the jury prior to each recess during the trial that the jurors should not discuss the case among themselves or allow anyone to discuss the case with them.

**12. Criminal Law § 113— joint trial — instructions — guilt or innocence of each defendant**

In this joint trial of two defendants for armed robbery, the charge of the court, when considered in its entirety, was not susceptible to the construction that the jury should convict both defendants if it found beyond a reasonable doubt that either defendant committed the offense charged in the indictment.

**13. Criminal Law § 168— construction of charge**

A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct.

**14. Criminal Law § 167— harmless error**

Insubstantial technical errors which could not have affected the result of the trial will not be held prejudicial.

DEFENDANTS appealed from *Hasty, J.,* at the 14 December 1970 Schedule "C" Session, MECKLENBURG Superior Court.

Defendants were charged in separate bills of indictment with armed robbery, and the two cases were consolidated for trial. Upon timely objection in the early stages of the trial, a voir dire was conducted with respect to the legality of defendants' arrest and the competency of their in-court identification

State v. Alexander

by witnesses to the robbery. The evidence on voir dire tends to show that on 26 August 1970 at about 11 a.m. a young black youth, carrying a small pearl-handled revolver, entered the Carolina Pharmacy in downtown Charlotte. Present in the pharmacy at the time were Mrs. Dorothy Turner, a clerk in charge, Randy Turner, her son, and Vicky Nance, a customer. The gunman held the revolver to Vicky Nance's head while he nudged her behind the counter. Then he held the gun to Mrs. Turner's head and required her to open one of the cash registers. The gunman required all three of them "to get down behind the counter." Then two more young black youths entered the drugstore. One of them opened the other cash register. They took about $60.00 in cash and the three robbers left together. The third robber did not approach the cash registers but stood at the window throughout the robbery, his face not fully visible. Shortly before the robbery, Randy Turner had seen one of the robbers in front of the building for about ten minutes, walking around and looking into the pharmacy through the window. Randy told his mother "that a man kept walking by and looking in" and that he thought they were going to be robbed. A little later, and before the robbery took place, this same man entered the pharmacy, bought a Coke, and returned to the sidewalk in front of the building.

The robbery was immediately reported to the police and Sergeant Smith interviewed Mrs. Turner and her son, both of whom furnished a description of the robbers. A short time after the robbery Sergeant Smith exhibited fourteen photographs to Mrs. Turner but she made no identification from them. A picture of these defendants was not among the fourteen photographs.

About 3 p.m. on the afternoon of the robbery, Sergeant Smith received reliable information from an informer that the robbers were Junior Gill, a man named Grady and a third subject. On 2 September 1970 at about 1 p.m. a second informer, whose information had proven reliable on six or seven previous occasions, told Sergeant Smith that Grady Wilson, Rickey Stevenson Alexander and William Gill, Jr., alias June Gill, were the three individuals involved in this robbery. This informant told the officer "how he knew of this information and how it was revealed to him." Sergeant Smith then saw Mrs. Turner again and exhibited to her ten additional photographs, including

an earlier lineup photograph, and Mrs. Turner identified defendant Grady Wilson from the earlier lineup photograph. Randy Turner likewise identified Wilson from the earlier lineup photograph. None of the twenty-four photographs shown these eyewitnesses contained a picture of Rickey Alexander.

On the basis of the information from the informers and the identifications by Mrs. Turner and her son, defendant Alexander was arrested at his home at 7:30 a.m. on 3 September 1970 without a warrant, and defendant Wilson was arrested at his home twenty minutes later without a warrant. William Gill, Jr. was also arrested. The defendants were taken immediately to the Law Enforcement Center in Charlotte where they were placed in separate interrogation rooms, each warned of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, and each defendant said he understood his rights. Alexander said he was twenty years old and had completed the eleventh grade. Wilson said he was eighteen years old and had completed the tenth grade. Each defendant thereupon signed a written "Waiver of Right to Remain Silent and Right to Counsel During Interview," and each also signed a "Waiver of Right to Presence of Lawyer as my Lawyer for Pre-trial Identification, Including Presence of Lawyer as My Lawyer Free of Cost to me if I am Indigent." Each defendant denied any knowledge of the robbery at Carolina Pharmacy and freely consented to stand in a lineup for identification purposes. A lineup of five participants, including Alexander, Wilson and Gill, was conducted. Mrs. Turner, Randy Turner and Vicky Nance viewed the lineup separately. Mrs. Turner identified subject No. 2 as the robber who came in the pharmacy and bought a Coca-Cola a few minutes before the robbery and later returned with the other two robbers. Randy Turner identified subjects No. 2 and No. 4 as participants in the robbery and said No. 4 was the one who had the gun. Mrs. Turner was then told for the first time that No. 2 was Grady Wilson and Randy was told for the first time that No. 2 was Grady Wilson and No. 4 was Rickey Stevenson Alexander. Vicky Nance identified No. 2 as one of the robbers. Gill was not identified by any of the viewers and was released. Following the lineup defendants were taken before a magistrate at about 11:00 a.m. and an arrest warrant was issued.

Randy Turner further stated on the voir dire that he identified Grady Wilson and Rickey Alexander at the lineup;

that "I did not know their names at that time. None of the photos that I was shown or the lineup I viewed had anything to do with my in-court identification of the defendants. I am basing my in-court identification of the two defendants on when I saw them at the time of the robbery." Mrs. Turner stated: "None of the photographs that I have been shown here today or at any other time had anything to do with the in-court identification I have made of the two defendants. I am basing my in-court identification on the fact that those two boys look, here in court, just as they did on the day of the robbery. At the lineup my son and I viewed the persons at separate times. We did not have a conference and discuss what we had seen. No one suggested to us that the lineup might contain the persons who had robbed us."

The court found facts substantially in accord with the foregoing narrative, and concluded (1) that the officer had probable cause to believe defendants had committed a felony, (2) that the arrests were legal, (3) that defendants, having been duly warned of their constitutional rights, freely and understandingly waived in writing their right to counsel and voluntarily agreed to stand in the lineup for identification purposes, (4) that the photographic identification procedures were not impermissibly suggestive so as to give rise to any likelihood of irreparable misidentification, and (5) the State had established by clear and convincing proof that the in-court identification of defendants by Mrs. Turner and Randy Turner were of independent origin, based on observations at the scene of the robbery.

Defendants offered no evidence on the voir dire.

The jury was recalled and, over objection, Mrs. Turner and Randy Turner positively identified defendants as participants in the robbery. Each defendant testified in his own behalf, and offered other witnesses in corroboration of his testimony, that he was elsewhere at 11 a.m. on 26 August 1970 when the robbery occurred at the Carolina Pharmacy.

The jury convicted both defendants of armed robbery. From judgment imposing active prison sentences, defendants appealed to the Court of Appeals. The appeal was transferred to this Court for initial review under our general order dated 31 July 1970. Errors assigned are noted in the opinion.

State v. Alexander

*Lila Bellar and George S. Daly, Jr., Attorneys for the Defendant Appellants.*

*Robert Morgan, Attorney General; I Beverly Lake, Jr., Assistant Attorney General, and Ronald M. Price, Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Defendants' first assignment of error is based on the contention that their warrantless arrest was made without probable cause and therefore illegal.

[1-3]  G.S. 15-41, in pertinent part, provides: "A peace officer may without warrant arrest a person: . . . (2) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody." In order to justify an arrest under this section, it is not required that a felony be shown actually to have been committed. It is only necessary that the officer have reasonable ground to believe that such an offense has been committed. *State v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100 (1954). The terms "probable cause," as used in the Fourth Amendment to the Federal Constitution, and "reasonable ground," as used in the foregoing statute, are substantial equivalents having virtually the same meaning. *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S.Ct. 329 (1959). An arrest without a warrant is based upon probable cause if the facts and circumstances known to the arresting officer warrant a prudent man in believing that a felony has been committed and the person to be arrested is the felon. *McCray v. Illinois*, 386 U.S. 300, 18 L. Ed. 2d 62, 87 S.Ct. 1056 (1967). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. One does not have probable cause unless he has information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." 5 Am. Jur. 2d, Arrest § 44 (1962) ; *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971).

State v. Alexander

[4]   Here, the police had a description of defendants, including their height, weight, estimated age, clothing, color and complexion. Defendant Wilson had been identified from photographs by two eyewitnesses and one informer. Furthermore, a second informer whose information had led to the conviction of seven persons within the past two years, had told Sergeant Smith that defendants and William Gill, Jr. were the three individuals involved in this robbery. He told the officer how he came into possession of this information and how it was revealed to him. Manifestly, the totality of these facts and circumstances would warrant a prudent man in believing that the felony of armed robbery had been committed at the Carolina Pharmacy and that these defendants participated in commission of the crime. We hold that the officers acted on reasonable ground and with probable cause. *State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440 (1970) ; *State v. Harris, supra* (279 N.C. 307, 182 S.E. 2d 364).

[5]   Defendants further argue, however, that their arrests without a warrant were illegal because the arresting officer had no reasonable ground to believe that they would "evade arrest if not immediately taken into custody." G.S. 15-41(2).

The record in this case reveals that an armed robbery had been committed and the robbers had fled the scene. During the following seven days they had concealed their identity and avoided, if not evaded, arrest. When the officers approached Rickey Alexander at his home on the morning of his arrest he denied his identity and "said he was not Rickey Alexander, but his brother." June Gill, who was in the patrol car and already in custody, identified Rickey Alexander and the officers then placed him under arrest.

Defendant Wilson had been described by eyewitnesses, identified from photographs by them and by an informer, and was subject to recognition on sight by the officers. He had ample reason to keep himself concealed. Although the officers had not been informed by anybody that defendants might flee the jurisdiction or evade arrest, the record shows they knew both defendants were under investigation as suspects in other recent armed robberies at Home Credit Company and Walker Drugstore. Armed robbery is a crime of violence, and those who participate in it may be expected to evade arrest as long as possible. The language of Justice Branch in *State v. Jacobs,*

277 N.C. 151, 176 S.E. 2d 744 (1970), is both appropriate and applicable here: "The facts and circumstances surrounding defendant's arrest furnished plenary evidence to support a reasonable belief on the part of the officers that defendant had committed a felony. The very nature of the crime suffices to support a reasonable belief that defendant would evade arrest if not immediately taken into custody." We hold that the officers were in possession of such facts as to justify taking defendants into custody without a warrant and that the arrest of each defendant was in all respects lawful. *State v. Grier,* 268 N.C. 296, 150 S.E. 2d 443 (1966); *State v. Egerton,* 264 N.C. 328, 141 S.E. 2d 515 (1965); *State v. Jacobs, supra.* This assignment of error is overruled.

Defendants next contend that their in-court identification should have been suppressed since it was the fruit of an illegal arrest and a suggestive lineup. This constitutes defendants' second and third assignments of error. We perceive no merit in these assignments.

[6] In the first place, the arrest was legal. Furthermore, there was evidence to show and the trial court found on voir dire that the in-court identification by Mrs. Turner and her son was independent in origin and not based on the lineup. This alone rendered the in-court identification competent even had the lineup procedures been improper. *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610 (1970); *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968).

[7] Finally, it should be noted that all evidence offered *in the presence of the jury* pertaining to the lineup was elicited by defense counsel on cross-examination. There was no objection made and no exception noted to the admission of this evidence. Assignments of error must be based on exceptions duly noted, *State v. Ferebee,* 266 N.C. 606, 146 S.E. 2d 666 (1966), and may not present a question not embraced in an exception. *Wilson v. Wilson,* 263 N.C. 88, 138 S.E. 2d 827 (1964); 1 Strong's N. C. Index 2d, Appeal and Error § 24. These assignments are overruled.

Defendant Alexander, as a witness in his own behalf, testified he was elsewhere at the time of the robbery. On cross-examination he denied he had ever been convicted of any crime. The solicitor then asked: "Were you convicted of store breaking

and larceny in 1965?" His counsel objected, saying: "If the court please, we are talking about juvenile matters which are not part of the criminal record." The objection was overruled and defendant answered: "When I was a juvenile, in 1965, I was convicted of store breaking and larceny." This defendant duly excepted and this constitutes his fourth assignment of error. Defendant argues that the evidence was incompetent for impeachment purposes by reason of the following provisions in G.S. 7A-287: "An adjudication that a child is delinquent or undisciplined shall not . . . be considered as conviction of any criminal offense."

Defendant testified on direct examination that he was twenty-one years of age. He now contends that the store breaking and larceny of which he was convicted was a reference to an adjudication of delinquency in 1965 and that the court should have conducted a voir dire in the absence of the jury to ascertain whether defendant was sixteen, or only fifteen, years of age at the time of the store breaking and larceny and whether it was heard on a petition in the juvenile court or tried on an indictment in the superior court.

[8-10] When a defendant in a criminal case takes the stand, he may be impeached by cross-examination with respect to previous convictions of crime, but his answers are conclusive and the record of prior convictions cannot be introduced to contradict him. *State v. Sheffield,* 251 N.C. 309, 111 S.E. 2d 195 (1959); *State v. King,* 224 N.C. 329, 30 S.E. 2d 230 (1944). In a criminal case, this rule applies to every defendant who takes the stand, regardless of his age at the time of his previous *conviction.* Upon a charge of store breaking and larceny—a felony the punishment for which could be ten years—this defendant, even if only fifteen years old at the time, could have been processed as a juvenile or tried and convicted in the superior court. *State v. Burnett,* 179 N.C. 735, 102 S.E. 711 (1920); *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969). He said he had been *convicted.* His answer was competent for impeachment purposes. The burden is on appellant to show error. *Burgess v. Construction Co.,* 264 N.C. 82, 140 S.E. 2d 766 (1965). "The burden is upon the appellant not only to show error but also to make it appear that the result was materially affected thereby to his hurt." *Garland v. Penegar,* 235 N.C. 517, 70 S.E. 2d 486 (1952). On the record before us he has failed to show error or prejudice. This assignment is overruled.

[11] Defendants' fifth assignment of error reads: "The trial judge failed to adequately warn the jurors of their duty to decide the case solely on the evidence." Defendants argue that upon any interim recess during the course of the trial the judge was required to warn the jurors not to discuss the case among themselves nor allow anyone to discuss it with them.

The record discloses that the jury was excused on several occasions in the course of the trial and that such warning was given on at least one occasion. There is no showing or suggestion of any impropriety on the part of any juror and no showing of prejudice. This assignment is obviously without merit and requires no further discussion.

[12] Defendants assign as error certain portions of the charge, contending that the jury was instructed, in effect, that should the jury find beyond a reasonable doubt that either defendant committed the offense charged in the bill of indictment it should convict both defendants.

The record reveals that following the arguments and charge of the court the jury retired and deliberated for a short period. It then returned to the courtroom and inquired whether the cases against these defendants were to be decided separately or jointly. The court instructed them that each case should be decided separately. "You may convict one in one case or acquit one in one case or vice versa. There are two verdicts you have to render." The jury again retired to the jury room and sometime thereafter the court recessed for the day. The following morning the court, on its own motion, further instructed the jury at length, reviewing the instructions he had given the previous day, correcting verbiage he felt might be misleading or susceptible to more than one interpretation, and closed his charge with a separate mandate as to each defendant as follows:

"Now I give you these final corrected instructions of Rickey Stevenson Alexander. If the State has satisfied you from the evidence beyond a reasonable doubt that on or about August 26, 1970, the defendant Rickey Stevenson Alexander had a firearm and took and carried away or aided and abetted some other person or persons in taking and carrying away $60.00 in cash from the place of business of the Carolina Pharmacy located at Trade and Brevard Streets in Charlotte in the presence of Dorothy Turner

who was there in attendance without her or the pharmacy's voluntary consent, by endangering or threatening the life of Dorothy Turner by the use or threatened use of a firearm, Rickey Stevenson Alexander knowing he was not entitled to take the $60.00 in cash and intending at that time to deprive the Carolina Pharmacy of its use permanently, it would be your duty to return a verdict of guilty of robbery with a firearm as charged in the bill of indictment. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

"I also now give you these final instructions—corrected instructions in the case against Grady Wilson. If the State has satisfied you from the evidence beyond a reasonable doubt that on or about August 26, 1970, the defendant Grady Wilson aided and abetted by some other person or persons who had a firearm, took and carried away $60.00 in cash from the place of business of the Carolina Pharmacy located at Trade and Brevard Streets in Charlotte in the presence of Dorothy Turner, who was there in attendance without her or the pharmacy's voluntary consent, by aiding and abetting the said other person or persons in endangering or threatening the life of Dorothy Turner by the use or threatened use of a firearm, Grady Wilson knowing that he was not entitled to take $60.00 in cash and intending at that time to deprive the Carolina Pharmacy of its use permanently, it would be your duty to return a verdict of guilty of robbery with a firearm as charged in the bill of indictment. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty in the case of Grady Wilson.

"Now, members of the jury, when you retire to the jury room, you will remember and bear in mind the entire charge of the court in your deliberations, which, of course, includes the final instructions I have just given you this morning. In other words, you will not detach the final instructions this morning in each case from the instructions you were given yesterday but consider the final instructions this morning only as a correction to the final instructions you received late yesterday, as I have indicated.

"Now, under the evidence and charge of the court, you may find both defendants guilty or not guilty or you may find one defendant guilty and the other defendant not guilty or vice versa, according as you may find the facts to be under the entire charge of the court.

"So you may retire now and say how you find."

[12-14] In the foregoing charge the able and patient trial judge sought to emphasize that a verdict of guilty should be rendered only against the defendant concerning whose guilt the jury had no reasonable doubt and that the jury should not convict both defendants unless it was satisfied of the guilt of each beyond a reasonable doubt. We think the charge as a whole made that quite clear. "A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct. *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965); *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964); *State v. Taft*, 256 N.C. 441, 124 S.E. 2d 169 (1962). If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal. *State v. Hall*, 267 N.C. 90, 147 S.E. 2d 548 (1966). Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial. *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916 (1955). The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred. *State v. Gatling*, 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. Jones*, 67 N.C. 285 (1872)." *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971).

A fair appraisal of the charge in its entirety impels the conclusion that the trial court submitted the question of the guilt or innocence of each defendant separately and presented the law fairly. The jury was not misled as defendants contend. The assignment of error addressed to the charge is overruled.

Defendants having failed to show prejudicial error, the verdict and judgment as to each defendant must be upheld.

No error.