STATE OF NORTH CAROLINA v. DOUGLAS McALLISTER

No. 62

(Filed 6 May 1975)

1. **Criminal Law § 40— free transcript of separate trial — denial proper**

Denial of defendant's motion for a free transcript of a separate trial of defendant on similar charges in which nonsuit was entered was not prejudicial error inasmuch as the transcript requested was one of a separate and distinct proceeding rather than a prior proceeding in the present case, and defendant's attorney did not take advantage of any other formal or informal alternative methods for discovering the information sought.

2. **Criminal Law § 92— two charges of forgery and uttering — consolidation proper**

The trial court did not err in consolidating for trial two cases against defendant for forgery and uttering where the two checks involved were both dated September 6, 1973 and made payable to defendant in his assumed name, both were drawn on the checking account of a third person in the Union National Bank on numbered checks given to the third person when he opened his account, and both were deposited by defendant in his account with Central Carolina Bank in his assumed name.

3. **Criminal Law § 76— defendant's statement — voluntariness**

Evidence was sufficient to support the trial court's findings that officers made no offer of hope, reward, or inducement to the defendant to make a statement, there was no threat or show of violence to persuade or induce the defendant to make a statement, the statement was made voluntarily, knowingly, and understandingly at a time when defendant was in full understanding of his rights, and defendant purposely, freely, knowingly, and voluntarily waived each of those rights.

4. **Criminal Law § 86— defendant's use of heroin — cross-examination proper**

The trial court properly allowed the solicitor to cross-examine defendant concerning his use of heroin since the questions related to matters within the knowledge of the witness, not to accusations of any kind made by others, and were competent for the purpose of impeachment.

5. **Criminal Law § 114— reliance by jurors on own recollection of evidence — instruction proper**

The trial court's instruction that the jury must rely on its own recollection of the testimony and evidence and not just the testimony recapitulated by the court was in strict compliance with G.S. 1-180 and did not amount to an expression of opinion.

6. **Criminal Law § 168— error in instructions — necessity for calling to trial court's attention**

Generally, an inadvertence in recapitulating the evidence must be called to the trial court's attention in time for correction and a slight

inaccuracy in stating the evidence will not be held reversible error when the matter is not called to the court's attention in apt time to afford opportunity for correction.

**7. Criminal Law § 163— assignment of error to failure to charge — necessity for setting out proper charge**

Where an assignment of error is based on failure to charge, it is necessary to set out the appellant's contention as to what the court should have charged.

**8. Forgery § 2— uttering forged check — authority to sign**

In a prosecution for forgery and uttering forged checks, the trial court did not err in failing to instruct the jury that the State had to prove that defendant did not have the authority to sign the checks where there was evidence that Robert Blake, whose signature appeared on the checks, was a fictitious character, and if a name signed to a negotiable instrument is fictitious, of necessity, the name must have been affixed by one without authority.

**9. Forgery § 2— elements of crime — sufficiency of instructions**

The trial court correctly charged on the three essential elements of forgery: (1) a false writing of the checks described in the indictments, (2) an intent to defraud on the part of defendant who falsely made the checks, and (3) an apparent capability of the checks to defraud.

**10. Forgery § 2— uttering forged check — words and figures of check in indictment — sufficiency**

Bills of indictment charging forgery sufficiently set out the manner or method of the alleged forgery and the person to whom the checks were uttered where the bills set out in exact words and figures the checks alleged to have been forged.

**11. Indictment and Warrant § 13— insufficiency of indictment — motion for bill of particulars proper**

Where the defendant thinks that an indictment fails to impart information sufficiently specific as to the nature of the charge, he may before trial move the court to order that a bill of particulars be filed.

ON *certiorari* to review the decision of the North Carolina Court of Appeals, reported in 23 N.C. App. 359, 208 S.E. 2d 890 (1974), which found no error in the trial before *Brewer, J.*, at the April 8, 1974 Session of DURHAM Superior Court. We allowed certiorari on 30 December 1974.

Defendant was tried and convicted of two counts of forgery and two counts of uttering a forged check, and received prison sentences on each count.

Evidence for the State tends to show: Frederick A. Crowell patronized the Stallion Club in Durham on the night of 5 August

1973. He had with him eight or nine blank checks issued to him by the Union National Bank in Creedmoor where he had opened a checking account several days before. The checks were stamped with Crowell's account number but not with his name or address. He discovered the checks missing the next morning, 6 August. He was not sure where he had lost the checks but thought it must have been at the Stallion Club since he last remembered them as being in his coat while at the club. He immediately notified the bank of his loss.

At trial, Crowell identified two checks introduced in evidence by the State as being among those issued to him by Union National Bank and discovered missing on 6 August. The checks were written for the amounts of $249.60 and $350.00. Both were payable to one James D. Jones and were purportedly signed by one Robert Blake. Crowell at no time authorized anyone to sign the checks "Robert Blake" or to designate "James D. Jones" as payee.

On 14 August 1973, Paula Zion, a secretary at the Forest Hills Branch of Central Carolina Bank, opened a checking account for one James D. Jones. James D. Jones and defendant are one and the same person, although defendant did not tell this to Paula Zion at that time.

Defendant deposited the check for $249.60, dated 6 September 1973, to the account of James D. Jones at the Wellons Branch of Central Carolina Bank, and deposited the check for $350.00, also dated 6 Septemberr 1973, to the same account at the main office of Central Carolina Bank in downtown Durham. Both checks were drawn on the Union National Bank and were returned by that bank stamped "signature not authorized and no such account." These checks, together with other abuses of this account, resulted in losses to Central Carolina Bank of $1,416.89.

On 21 September 1973, defendant was taken into custody by Detective A. L. Parham of the Durham Police Department. Defendant was read his rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and signed a written waiver thereof. Defendant told Detective Parham he found the checks in question at a dance and deposited them in an account he had already opened at Central Carolina Bank in the name of James D. Jones. He stated that no one else was involved in these checks.

Evidence for the defendant tends to show: Defendant occasionally used the name James Jones because, while living in New Jersey several years earlier, a "loan shark" company had threatened to kill him if he did not repay them, so he took the name "James Jones" and moved to New York City. He later came to Durham and opened an account at Central Carolina Bank in August 1973 under the name of "James Jones." He took a job as salesman for the Kirby Vacuum Cleaner Company. The two checks in question were paid to him by one Robert Blake in partial payment for three vacuum cleaners which Blake planned to purchase from him. Defendant testified he does not know what happened to the contracts he made with Blake for the sale of the vacuum cleaners, does not know Blake's address, and did not ask Blake for his identification or social security number when negotiating the sale for the vacuum cleaners.

Diane Perry, a niece of defendant, assisted him in some of the paper work involved in selling vacuum cleaners. She recalled seeing "around two" contracts for sale of vacuum cleaners to Robert Blake, although she did not know when in 1973 she saw them. After defendant was arrested, she saw James Odom going through defendant's briefcase, "taking papers out and leaving others in."

James A. Odom, who had been defendant's sales manager at the Durham branch of the Kirby Vacuum Cleaner Company, described defendant as a salesman with "wonderful potential." He carefully searched the briefcase where defendant kept his sales contracts and his search thereof yielded no contracts bearing the name "Robert Blake."

Cager Perry, defendant's nephew, is a musician in a musical group that sometimes plays at the Stallion Club. He has never seen his uncle there.

Other facts pertinent to decision are set out in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorneys Wilton E. Ragland, Jr. and C. Diederich Heidgerd for the State.*

*Thomas F. Loflin III for defendant appellant.*

MOORE, Justice.

Defendant brings forward nine assignments of error which we will treat separately.

[1]   Defendant first contends that the court erred in refusing to grant his motion for a free transcript of a separate trial of defendant on similar charges in which nonsuit was entered. In support of this contention, defendant relies on *Britt v. North Carolina*, 404 U.S. 226, 30 L.Ed. 400, 92 S.Ct. 431 (1971). In *Britt*, the Supreme Court of the United States reaffirmed its previous holding that a transcript of prior proceedings must be given to an indigent defendant if the court determines the transcript is needed for an effective defense. That Court stated that in making this determination, the trial court should consider the value of the transcript to the defendant in connection with the trial for which it is sought and the availability of alternative devices that would fulfill the same function as a transcript. In applying those rules to the facts in *Britt*, the Supreme Court held that Britt's attorney could have obtained the information needed by simply making a request to the court reporter. The Court therefore held that under the facts in *Britt*, there was no showing of need and the denial of a free transcript was not prejudicial error.

As in *Britt*, the facts in the present case are important in determining the need of defendant's counsel for the transcript in preparing his defense. The most important fact is that in the present case the transcript requested was not of a prior proceeding in these cases, but was that of a trial in an entirely separate and distinct case. As in *Britt*, counsel for defendant in this case also represented him in the separate trial for which he sought to obtain a transcript. Furthermore, there is no indication in the record that defendant's counsel made any effort to obtain the information which he desired through other methods or that he attempted to procure such information by personally contacting the court reporter as suggested in *Britt*. Inasmuch as the transcript requested was one of a separate and distinct proceeding rather than a prior proceeding in the present case, and defendant's attorney did not take advantage of any other formal or informal alternative methods for discovering the information sought, we hold that under *Britt* the denial of his motion was not prejudical error. *See* 51 N.C.L. Rev. 621 (1973).

[2]   Three cases against defendant for forgery and uttering were called for trial. The State moved to consolidate these cases. Defendant moved to sever and the court allowed consolidation of two of the cases over defendant's objection. Defendant assigns this as error.

The two checks here involved were both dated September 6, 1973 and made payable to defendant in his assumed name, James D. Jones or James Jones. Both were drawn on the checking account of Frederick A. Crowell in the Union National Bank on numbered checks given to Mr. Crowell by the bank when he opened his account, and both were deposited by defendant in his account with Central Carolina Bank in the name of James D. Jones, after he endorsed the checks as James Jones. Under these facts, this assignment obviously has no merit. " . . . When a defendant is charged with crimes of the same class and the offenses are not so separate in time or place and not so distinct in circumstances as to render a consolidation unjust and prejudicial, consolidation is authorized in the discretion of the court by G.S. 15-152. *State v. White,* 256 N.C. 244, 123 S.E. 2d 483 (1962) ; *State v. Johnson,* 280 N.C. 700, 187 S.E. 2d 98 (1972)." *State v. Anderson,* 281 N.C. 261, 264-65, 188 S.E. 2d 336, 339 (1972). (G.S. 15-152 was repealed effective 1 July 1975 by Session Laws of 1973, Chapter 1286, Section 26.)

[3]   Defendant next contends that the trial court erred in permitting, over defendant's objection, the State's witness Detective Parham to testify regarding an out-of-court statement made by defendant to Detective Parham concerning the charges in these two cases.

By this assignment, defendant asserts that the warning given by the Durham police regarding his constitutional right to remain silent was insufficient due to the fact that the warning was not given in accordance with *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and G.S. 7A-451.

In *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968), this Court reviewed the exact warning and waiver of counsel given by Detective Parham to defendant in the present case. We there held, after quoting in the opinion the warning given to defendant and the waiver signed by him, that these were sufficient under *Miranda.* We then overruled the defendant's objection to the introduction of defendant's inculpatory state-

ments made by him to the officer of the Durham Police Department.

After *voir dire* hearing, the court in the present cases made findings of fact based on competent evidence, and concluded that there was no offer of hope, reward, or inducement to the defendant to make a statement; that there was no threat or show of violence to persuade or induce the defendant to make a statement; that the statement made to Detective Parham was made voluntarily, knowingly, and understandingly at a time when defendant was in full understanding of his rights; and that he purposely, freely, knowingly, and voluntarily waived each of those rights. Such conclusions, when supported by competent evidence, are conclusive on appeal. *State v. Thompson,* 285 N.C. 181, 203 S.E. 2d 781 (1974); *State v. Crews,* 284 N.C. 427, 201 S.E. 2d 840 (1974); *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972); *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969). This assignment is overruled.

[4] By his next assignment of error defendant contends that the trial court erred in permitting the solicitor, over defendant's objection, to question him concerning his use of heroin.

On cross-examination, defendant testified without objection: "I started going under the name of James Jones approximately in 1969 or 1970. It was because someone was after me. I got the James Jones identification in New York. The medical card is for my medical treatment. When you are on welfare you can take that to any doctor to receive medical treatment." The solicitor then, over defendant's objection, asked defendant concerning his use of heroin. Defendant answered that he wasn't using heroin at the time of his return to North Carolina in July 1973, and that he never considered himself as having a habit.

As stated in *State v. Williams,* 279 N.C. 663, 675, 185 S.E. 2d 174, 181 (1971): "It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. [Citations omitted.] . . . . " In this case the questions related to matters within the knowledge of the witness, not to accusations of any kind made by others, and were competent for the purpose of impeachment. *See State v. Lowery,* 286 N.C. 698, 213 S.E. 2d 255 (1975); *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d

State v. McAllister

874 (1972); *State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875 (1969). This assignment is overruled.

[5]   The trial court, after reviewing some of the evidence, instructed the jury: " . . . I have not recapitulated all of the evidence in this case. I now instruct you that your verdict should be based on your own recollection of all of the testimony and not just the testimony recapitulated by the court." Defendant contends that by the quoted sentence the trial court is telling the jury that the court's recollection of the testimony is correct. Although the defendant does not set out what the trial court should have charged, it is noted that prior to the instruction complained of the court also told the jury, ". . . it is your duty to recall all of the evidence as best you can as it relates to each of these cases . . . , " and " . . . [y]our verdict is to be based on your own recollection of the testimony and evidence in each of these cases, not what the District Attorney may have argued to you as the evidence, or the attorney for the defendant, or even the Court, but your verdict should be based on your own recollection of the evidence and testimony in each of these cases."

In *State v. Tyson,* 242 N.C. 574, 89 S.E. 2d 138 (1955), we approved a similar statement by the trial judge. We hold that this instruction did not constitute expression of opinion but was in strict compliance with G.S. 1-180.

Defendant further contends, however, that the trial court in recapitulating the evidence misstated the evidence of Eugene Lindsey as to the amount of credits in defendant's bank account and incorrectly stated a part of Detective Parham's testimony. Defendant did not at the time request the court to correct those alleged errors.

[6]   Generally, an inadvertence in recapitulating the evidence must be called to the trial court's attention in time for correction and a slight inaccuracy in stating the evidence will not be held reversible error when the matter is not called to the court's attention in apt time to afford opportunity for correction. As stated in *State v. Cornelius,* 265 N.C. 452, 144 S.E. 2d 203 (1965): "We have repeatedly held that an inadvertence . . . in recapitulating the evidence must be called to the attention of the court in time for correction. After verdict, the objection comes too late. *S. v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *S. v. Holder,* 252 N.C. 121, 113 S.E. 2d 15; *S. v. Adams,* 245 N.C. 344, 95 S.E. 2d 902." *See also* 3 Strong, N. C. Index 2d, Criminal Law

§ 113 (1967). In any event, the alleged errors were inconsequential and in no way prejudicial to defendant. This assignment is overruled.

[7] For his next assignment of error, defendant alleges " . . . the court erred in charging the jury on the elements of the crime of forgery alleged in the first count of each of the indictments in these two cases, in that such charge . . . was neither sufficient in law nor complete." This assignment of error does not comply with the requirement that where an assignment is based on failure to charge it is necessary to set out the appellant's contention as to what the court should have charged. *State v. Crews, supra; State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970) ; *State v. Wilson*, 263 N.C. 533, 139 S.E. 2d 736 (1965). Notwithstanding, since a long prison sentence is involved, we have elected to discuss defendant's contention.

The trial court charged:

"I now instruct you, members of the jury, for you to find the defendant guilty of forgery in each of these cases the State must prove three things beyond a reasonable doubt. I have given you the definition of the term reasonable doubt.

"First, that the defendant falsely made this check; that is that he wrote this check, endorsed this check in the name of Robert Blake; that is that he actually wrote the name Robert Blake on the check and endorsed the check which was made out to James D. Jones; and second, that at the time the defendant made these checks he intended to defraud and third, that the checks appeared to be genuine.

"So, I instruct you, members of the jury, if you find from the evidence beyond a reasonable doubt that on the 6th day of September, 1973, the defendant Douglas Leon McAllister wrote these checks, that is completed the writing as you observed on the checks, and that he signed the name or forged the name Robert Blake to these checks, intending at that time to defraud, and that the checks appeared to be genuine, it would be your duty to return a verdict of guilty as charged bearing in mind, members of the jury, that you are to treat each of these cases of forgery separately. However, if you do not so find or have a rea-

sonable doubt as to one or more of these things it would be your duty to return a verdict of not guilty."

Defendant first contends that the trial court erred when it stated in the charge that one element of forgery was to find that the defendant endorsed the checks. Defendant admitted: "I signed the name James D. Jones on the back of those checks." So, that fact was not in dispute. In addition, in the same portion of the charge excepted to by defendant, the jury was instructed that in order to find defendant guilty the jury must find beyond a reasonable doubt that defendant actually wrote the name Robert Blake on the checks. We fail to see how the inclusion of an admitted fact could prejudice defendant.

[8]  Defendant also contends that the trial court erred by failing to instruct the jury that the State had to prove that the defendant did not have the authority to sign the checks. Defendant bases this contention on *State v. Phillips*, 256 N.C. 445, 124 S.E. 2d 146 (1962). *Phillips*, however, is not applicable to the question raised by defendant. *Phillips* pertains to the sufficiency of evidence to go to the jury. There we stated: "The State makes no showing that the signing of the check was unauthorized and false. The court should have allowed the motion to nonsuit." To the contrary, in the present cases defendant in his brief admits that the State presented sufficient evidence from which the jury could find that neither the defendant nor Robert Blake had any authority from the owner of the checks to sign them. Thus, the facts in the present cases clearly distinguish them from *Phillips*.

Furthermore, there is evidence that Blake was a fictitious person. As stated in *Phillips*: "If the name signed to a negotiable instrument, or other instrument requiring a signature, is fictitious, of necessity, the name must have been affixed by one without authority, and if a person signs a fictitious name to such instrument with the purpose and intent to defraud—the instrument being sufficent in form to import legal liability— an indictable forgery is committed. . . . " And the fact that a " ' . . . purported maker of such check had no account in the bank is admissible as tending to prove that such purported maker was a fictitious person.' [Citation omitted.] . . . [I]t has been held that such testimony is *prima facie* evidence of the non- existence of the maker. [Citation omitted.]" *Ibid.*

The trial court here clearly charged the jury that in order to convict defendant of forgery the State must prove three things beyond a reasonable doubt: (1) That he *falsely* made the check, that is, that he actually wrote the name Robert Blake on the check; (2) that at the time he intended to defraud; and (3) that the check appeared to be genuine. The word "falsely" as applied to the making of a check, in order to constitute forgery, implies that the check is not genuine, that in itself it is false. 36 Am. Jur. 2d, Forgery § 6 (1968).

The fact that the drawer of a check lacks authority is one characteristic which renders an instrument false, and an instruction including the requirement that there be a false making encompasses the requirement that the instrument be drawn by one who lacks authority. In *State v. Phillips, supra,* the Court discussed the requirement of " . . . the falsity of the instrument, *i.e., that it was executed without authority.*" (Emphasis added.)

[9] The evidence in the cases at bar tends to show that Mr. Crowell lost some checks with his account number thereon, and that later two of these checks purportedly signed by Robert Blake, payable to James Jones, an alias used by defendant, and endorsed by defendant in the name of James Jones, were deposited in an account opened by defendant in the name of James Jones. Further, the evidence tends to show that neither Robert Blake nor defendant had authority to sign these checks and that Robert Blake possibly was a fictitious person. This evidence was sufficient to permit a jury to find (1) a false writing of the checks described in the first count of the bills of indictment; (2) an intent to defraud on the part of defendant who falsely made the checks; and (3) an apparent capability of the checks to defraud. These are the three essential elements necessary to constitute the crime of forgery. *State v. Greenlee,* 272 N.C. 651, 159 S.E. 2d 22 (1968); *State v. Keller,* 268 N.C. 522, 151 S.E. 2d 56 (1966); *State v. Phillips, supra; State v. Dixon,* 185 N.C. 727, 117 S.E. 170 (1923). Here the court correctly charged on all the essential elements of forgery.

We also note that defendant did not seek to show by his evidence that he signed the check with the authority of Robert Blake, Frederick Crowell, or anyone else. Rather, defendant contended that he *at no time signed the checks* but merely took them from one Robert Blake, endorsed them, and deposited them in his account. It appears, therefore, that presence or absence

of authority was not in dispute in this case. We fail to see how defendant could have been prejudiced by the instruction on forgery in this case. This assignment is overruled.

Defendant by his next assignment of error contends that the following portion of the court's instruction to the jury is erroneous:

"So, I charge you, members of the jury, if you find from the evidence and beyond a reasonable doubt that on the 6th day of September, 1973, the defendant Douglas Leon McAllister intending to defraud passed these checks which appeared to be genuine, but which he knew was [sic] falsely made, it would be your duty to return a verdict of guilty as charged in the bill of indictment, that is of uttering a forged check."

Defendant specifically contends that this portion of the charge omitted the essential element that the instrument involved has to be a forgery. The court, however, in the excepted portion of the charge, specifically said that the defendant would be guilty if, intending to defraud, he passed these checks which appeared to be genuine, *"but which he knew was [sic] falsely made."* (Emphasis added.) In the preceding paragraph the court had explained in detail that uttering a forged check was the fraudulent offering to another of a check which defendant knew to be falsely made but which appeared to be genuine. Taken together, these instructions included all the essential elements of the offense. As we said in *State v. Greenlee, supra:* "Uttering a forged instrument consists in offering to another the forged instrument with the knowledge of the falsity of the writing and with intent to defraud. [Citation omitted.] . . . . " *See also* G.S. 14-120.

In construing the charge contextually as we are required to do, we hold that the charge as a whole presented the law fairly and clearly to the jury. 3 Strong, N. C. Index 2d, Criminal Law § 168 (1967) ; *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971) ; *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966) ; *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965). This assignment is overruled.

[10]   Finally, defendant contends that the bills of indictment in these cases were fatally defective and that judgment should be arrested. Defendant contends that the bills charging forgery

fail to set out the manner or method of the alleged forgery. These bills of indictment set out in exact words and figures the checks alleged to have been forged. In *State v. Russell,* 282 N.C. 240, 192 S.E. 2d 294 (1972), we approved an indictment for forgery couched in the same language. There we said:

> "The purpose of an indictment 'is (1) to give the defendant notice of the charge against him to the end that he may prepare his defense and to be in a position to plead former acquittal or former conviction in the event he is again brought to trial for the same offense; (2) to enable the court to know what judgment to pronounce in case of conviction.' *State v. Burton,* 243 N.C. 277, 90 S.E. 2d 390 (1955); *State v. Greer,* 238 N.C. 325, 77 S.E. 2d 917 (1953); *State v. Dorsett* and *State v. Yow,* 272 N.C. 227, 158 S.E. 2d 15 (1967).

> "G.S. 15-153 was enacted many years ago to simplify forms of indictment. (Chapter VI, 1811 Laws of North Carolina.) This statute provides that every criminal indictment is sufficient in form for all intents and purposes if it expresses the charge in a plain, intelligible, and explicit manner, and that an indictment shall not be quashed by reason of any informality or refinement if in the bill sufficient matters appear to enable the court to proceed to judgment."

On the authority of *State v. Russell, supra,* we hold the first counts in the bills of indictment sufficiently charged the essential elements of the crime of forgery.

Defendant, however, also contends that the counts which charge uttering forged checks are defective in that they do not specify to whom the checks were uttered. Again, this Court in *State v. Russell, supra,* approved a bill of indictment charging the uttering of the forged check in substantially the same words. The indictments in the present cases charged all the essential elements of the offense, that is, the offering of the forged instruments to another with the knowledge of the falsity of the checks and with intent to defraud. As we said in *State v. Bissette,* 250 N.C. 514, 108 S.E. 2d 858 (1959):

> "G.S. 15-151 . . . modifies the common law. It is not now necessary to name the injured party where prosecution is based on forgery or other fraud. It is, however, necessary to allege and prove the evil intent when fraud is the foun-

dation for the prosecution. *S. v. Phillips,* 228 N.C. 446, 45 S.E. 2d 535; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *S. v. Horton,* 199 N.C. 771, 155 S.E. 866; *S. v. Reed,* 196 N.C. 357, 145 S.E. 691; *S. v. Edwards,* 190 N.C. 322, 130 S.E. 10; *S. v. Farmer,* 104 N.C. 887."

[11]   The defendant in these cases made no motion for a bill of particulars. Speaking to the subject in *State v. Shade,* 115 N.C. 757, 20 S.E. 537 (1894), Avery, Justice, stated: " . . . Where the defendant thinks that an indictment . . . fails to impart information sufficiently specific as to the nature of the charge, he may before trial move the court to order that a bill of particulars be filed, and the court will not arrest the judgment after verdict where he attempts to reserve his fire until he takes first the chance of acquittal. *S. v. Brady,* 107 N.C. 826. . . . " *Accord, State v. Russell, supra.*

We hold that the bills of indictment in these cases properly charged the crimes of forgery and of uttering forged checks. This assignment is overruled.

All of defendant's assignments of error have been considered and all have been overruled. Hence, the decision of the Court of Appeals is affirmed.

Affirmed.